No. 59,925

RONALD E. DENTON, *Claimant*, v. SUNFLOWER ELECTRIC COOPERATIVE, INC., *Respondent/Appellee*, and HOME INDEMNITY INSURANCE COMPANY, *Insurance Carrier/Appellee*, and KANSAS WORKERS' COMPENSATION FUND, *Appellant*.

(748 P.2d 420)

Opinion filed January 15, 1988.

*Michael J. Unrein*, of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, argued the cause, and *Kerry M. Gasper*, of the same firm, and *Brock R. McPherson*, of McPherson, Bauer, Pike & Pike, Chartered, of Great Bend, were with him on the briefs for appellant Kansas Workers' Compensation Fund.

*Hal D. Meltzer*, of Turner and Boisseau, Chartered, of Wichita, argued the cause, and *Harry Bleeker* and *Casey R. Law*, of Turner and Boisseau, Chartered, of Great Bend, were on the briefs for appellees Sunflower Electric Cooperative and Home Indemnity Company.

The opinion of the court was delivered by

PRAGER, C.J.: This is an appeal by the Kansas Workers' Compensation Fund (Fund) from a judgment of the district court affirming an award of workers' compensation and assessing the entire amount of the award against the Fund. The claimant is Ronald E. Denton. The employer is Sunflower Electric Cooperative, and its insurance carrier is Home Indemnity Company. Following the judgment of the district court, the Fund appealed to the Court of Appeals which affirmed the district court in *Denton v. Sunflower Electric Co-op*, 12 Kan. App. 2d 262, 740 P.2d 98 (1987). The Supreme Court granted the Fund's petition for review.

The facts in the case, which are set out in detail in the Court of

Appeals opinion, are essentially as follows: The claimant, Ronald E. Denton, was employed by Sunflower Electric Cooperative as a shift foreman. On May 21, 1983, claimant fell at work and injured his back. In August of that year, he underwent surgery for a ruptured disc. He returned to work in December 1983, and remained there until the plant shut down in August 1984. Denton applied for work at the Sunflower plant in Holcomb but was turned down because of his back problems. He then filed a workers' compensation claim, and Sunflower impleaded the Workers' Compensation Fund.

It was the position of the former employer, Sunflower Electric, that it had knowledge of Denton's preexisting back problem and that those problems contributed to his current disability. The evidence showed that from 1978 until the date of injury, Denton had missed at least 18 days of work due to his back. The Administrative Law Judge (ALJ) held in favor of Denton and then assessed the entire workers' compensation award against the Fund. On appeal, the director affirmed. The Fund then appealed to the district court which also affirmed. The Fund then appealed to the Court of Appeals which affirmed the district court.

This court granted the Fund's petition for review which raised a single issue: Whether the existence of a reservation in the mind of an employer in deciding whether to hire or retain a handicapped employee is an essential element of the burden of proof under K.S.A. 44-567(b). The Court of Appeals answered the question in the negative in a comprehensive opinion by the Honorable John E. Rees which sets forth the facts in detail, along with the applicable statutes and the court's rationale in concluding that a mental reservation of the employer is not a necessary element under the statute.

Judge Rees's well-written opinion analyzed the previous Kansas appellate cases on the issue and concluded that, for an employer to be relieved of liability for payment under K.S.A. 44-567, it is not necessary that the employer prove that it had a mental reservation when deciding to hire or retain the employee. The Court of Appeals opinion sets forth in great detail the evidence before the district court which established that Sunflower Electric had retained Denton as its employee after ac-

quiring knowledge of Denton's preexisting back condition. It is not necessary to review the evidence of the employer's prior knowledge in view of the fact that the Fund did not petition for review on that issue.

The Court of Appeals then proceeded to determine the second issue on the appeal—whether a mental reservation is required in order for an employer to shift liability to the Kansas Workers' Compensation Fund. Judge Rees carefully analyzed the statutes and the Kansas cases and concluded that various statements made in cases where it was not necessary for the appellate disposition of the case were dicta. We agree with the analysis of the statutes and cases presented by Judge Rees and agree with the conclusion of the Court of Appeals that the existence of a "mental reservation" was not necessary in order for Sunflower Electric to shift to the Workers' Compensation Fund the liability for the compensation owed to Denton.

The controlling statute is K.S.A. 44-567, which was originally enacted in Laws of 1974, Chapter 203, Section 47. It provides:

"44-567. Same; relief from or apportionment of liability for subsequent injuries to handicapped workmen; proof of knowledge of impairment required; presumptions; commissioner of insurance to be impleaded. (a) An employer (1) who operates within the provisions of the workmen's compensation act (2) who. knowingly employs or retains a handicapped employee, as defined in K.S.A. 44-566 and amendments thereto, shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

"(A) Whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director awards compensation therefor and finds that the injury, disability or the death resulting therefrom probably or most likely would not have occurred but for the preexisting physical or mental impairment of the handicapped employee, all compensation and benefits payable because of the injury, disability or death shall be paid from the workers' compensation fund.

"(B) Subject to the provisions of the workmen's compensation act, whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director finds that the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the director shall determine in a manner which is equitable and reasonable and based upon medical evidence the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment, and the amount so found shall be paid from the workers' compensation fund.

"(b) In order to be relieved of liability under this section, the employer must

prove either that the employer had knowledge of the preexisting impairment at the time the employer employed the handicapped employee or that the employer retained the handicapped employee in employment after acquiring such knowledge. The employer's knowledge of the preexisting impairment may be established by any evidence sufficient to maintain the employer's burden of proof with regard thereto. If the employer, prior to the occurrence of a subsequent injury to a handicapped employee, files with the director a notice of the employment or retention of such employee, together with a description of the handicap claimed, such notice and description of handicap shall create a presumption that the employer had knowledge of the preexisting impairment.

"(c) Knowledge of the employee's preexisting impairment or handicap at the time the employer employs or retains the employee in employment shall be presumed conclusively if the employee, in connection with an application for employment or an employment medical examination or otherwise in connection with obtaining or retaining employment with the employer, knowingly: (1) Misrepresents that such employee does not have such an impairment or handicap; (2) misrepresents that such employee has not had any previous accidents; (3) misrepresents that such employee has not previously been disabled or compensated in damages or otherwise because of any prior accident, injury or disease; (4) misrepresents that such employee has not had any employment terminated or suspended because of any prior accident, injury or disease; (5) misrepresents that such employee does not have any mental, emotional, or physical impairment, disability, condition, disease or infirmity; or (6) misrepresents or conceals any facts or information which are reasonably related to the employee's claim for compensation.

"(d) An employer shall not be relieved of liability for compensation awarded nor shall an employer be entitled to an apportionment of the costs thereof as provided in this section, unless the employer shall cause the commissioner of insurance, in the capacity of administrator of the workers' compensation fund, to be impleaded, as provided in K.S.A. 44-566a and amendments thereto, in any proceedings to determine the compensation to be awarded a handicapped employee who is injured or disabled or has died, by giving written notice of the employee's claim to the commissioner of insurance prior to the first full hearing where any evidence is presented on the claim.

"(e) Amendments to this section shall apply only to cases where a handicapped employee, or the employee's dependents, claims compensation as a result of an injury occurring after the effective date of such amendments.

"(f) The total amount of compensation due the employee shall be the amount for disability computed as provided in K.S.A. 44-503a, 44-510 to 44-510g, inclusive, and 44-511, and amendments thereto, and in no case shall the payments be less nor more than the amounts provided in K.S.A. 44-510c and amendments thereto."

It should be noted that K.S.A. 44-567 does not shift the burden of payment of workers' compensation to the Fund merely because the employee has a preexisting impairment.

Section (a) (A) provides that if the director finds that the injury, disability, or death of an employee "probably or most likely would not have occurred but for the preexisting physical or mental impairment of the handicapped employee, all compensation . . . shall be paid from the workers' compensation fund."

Section (a) (B) provides that if the injury or death probably or most likely would have been sustained without regard to the employee's preexisting impairment, the director shall apportion the compensation award and require the Fund to pay that proportion of the cost of the award which is attributable to the employee's preexisting impairment.

K.S.A. 44-567(b) requires the employer to prove that it had knowledge of the preexisting impairment at the time the employer employed the handicapped employee or retained the handicapped employee in employment after acquiring such knowledge.

There is no provision in the statute requiring the employer to prove it had a "reservation" about employing the handicapped employee.

The concept that a "reservation" be considered is first suggested in *Oates v. Post & Danley Truck Lines*, 3 Kan. App. 2d 337, 594 P.2d 684 (1979). As pointed out by Judge Rees in his opinion, *Oates* was decided on the basis of the employer's prior knowledge of the employee's disability. It did not hold that an employer had to prove a "reservation." Later Court of Appeals cases cited by Judge Rees picked up the suggestion and began considering whether the employer had a "reservation" about employing the handicapped employee.

In *Johnson v. Kansas Neurological Institute*, 240 Kan. 123, 727 P.2d 912 (1986), the Supreme Court stated that, under K.S.A. 44-567(b), the employer had the burden of proving that it knowingly employed or knowingly retained in its employ a handicapped worker. The suggestion of the employer, KNI, that the court should overrule the reservation concept was not considered because the issue was not raised in the trial court.

The issue as to a requirement of a reservation is for our determination in this case. We hold that, under K.S.A. 44-567, an employer is not required to prove he, she, or it had a mental

reservation when deciding to hire or retain a handicapped employee.

The statute only requires a knowledge of the preexisting impairment, not a reservation. What is a "reservation"? It has never been defined in the cases by anyone. A mental reservation obviously would require a personal, subjective state of mind in which the employer has a reluctance, a doubt, or a hesitancy about employing the handicapped person.

Some employers may well have a mental reservation in every case; other employers, being interested in helping a handicapped person, may never have a mental reservation. If the Ford Motor Company is the employer, whose state of mind is to be considered to determine if a mental reservation exists—the supervisor, the plant manager, or the president of the company? In a two-person partnership, which partner is considered to be the employer who has a reservation—the older partner or the partner who owns a greater percentage of the business?

Such complicated considerations were certainly not contemplated by the legislature when it enacted K.S.A. 44-567, which requires only a "knowledge of the preexisting impairment."

We agree with the Court of Appeals that for an employer to be relieved of liability for payment of compensation as authorized by K.S.A. 44-567, it is not necessary that the employer prove it had a mental reservation when deciding to hire or retain the employee.

In 1987, the Kansas Legislature, obviously concerned with the so-called mental reservation requirement, amended K.S.A. 44-567(b) by adding the following statement at the end.

"If the employer files a written notice of an employee's preexisting impairment with the director in a form approved by the director therefor, such notice *establishes* the existence of a reservation in the mind of the employer when deciding whether to hire or retain the employee." L. 1987, ch. 189, § 3.

The 1987 amendment had not been enacted when this case was determined by the director and the district court, nor when it was submitted to the Court of Appeals. It is first mentioned in the Fund's petition for review following the Court of Appeals decision.

We have considered the 1987 amendment to K.S.A. 44-567(b) and concluded that it should not be interpreted to change the

determination of the Court of Appeals in this case. In our judgment, the legislature was concerned about the so-called "mental reservation" requirement mentioned in the various cases and concluded it should do something to nullify what it considered to be a court-established "mental reservation" rule.

The legislature left unchanged the language in 44-567(b) that "[i]n order to be relieved of liability under this section, the employer must prove either that the employer had *knowledge* of the preexisting impairment at the time the employer employed the handicapped employee or the employer retained the handicapped employee in employment after acquiring such knowledge." A "mental reservation" was not added as a requirement to be proved by the employer. We hold that the amendment to K.S.A. 44-567 enacted in 1987 did not change the statutory requirements for an employer to be relieved of liability under that section.

For the reasons set forth above, we hold that for an employer to be relieved of liability for payment of compensation as authorized by K.S.A. 44-567 and as amended in 1987, it is not necessary that the employer prove it had a mental reservation when deciding to hire or retain a handicapped employee. Any holdings or language to the contrary contained in *Johnson v. Kansas Neurological Institute,* 240 Kan. 123; *Ramirez v. Rockwell Int'l,* 10 Kan. App. 2d 403, 701 P.2d 336 (1985); *Hines v. Taco Tico,* 9 Kan. App. 2d 633, 683 P.2d 1295 (1984); *Carter v. Kansas Gas & Electric Co.,* 5 Kan. App. 2d 602, 621 P.2d 448 (1980); and *Oates v. Post & Danley Truck Lines,* 3 Kan. App. 2d 337, are held to be erroneous and are hereby overruled.

The judgment of the Court of Appeals and the judgment of the district court are affirmed.