(789 P.2d 1176)

No. 64,074

JOHN-BRANDON MATTHEW LEMERY, a minor, and RYAN SEBASTIAN LEMERY, a minor, by and through DEBRA L. GARRISON, their mother and natural guardian; and KENNETH M. DUCKWORTH, as Special Administrator of the Estate of John E. Lemery, Deceased, *Appellees*, v. BUFFALO AIRWAYS, INC., *Defendant*, and MID-CONTINENT TRANSPORT, INC., and BITUMINOUS INSURANCE COMPANY, *Intervenors/Appellants*.

Opinion filed April 6, 1990.

*Vaughn Burkholder*, of Foulston & Siefkin, of Wichita, for the intervenors/appellants.

*Randall E. Fisher*, of Michaud, Hutton & Bradshaw, of Wichita, for the appellees.

Before LARSON, P.J., BRAZIL, J., and RICHARD W. WAHL, District Judge Retired, assigned.

WAHL, J.: John Lemery was killed in the course of his employment on April 13, 1987. His children were paid workers compensation benefits until they recovered against Buffalo Airways, Inc., the owner and operator of the plane in which Lemery was riding at the time of his death. Mid-Continent Transport, Inc., and Bituminous Insurance Company appeal the district court's order requiring them to contribute attorney fees proportionate to the amount Lemery's children would have received under workers compensation beyond the date of plaintiffs' settlement with Buffalo.

John Lemery was employed by Mid-Continent Transport, Inc., at the time of his death. He was survived by two minor sons, the plaintiffs in this action, who bring this action through their mother and natural guardian, Debra L. Garrison, Lemery's former wife.

Garrison filed a claim for workers compensation death benefits on behalf of her minor sons. An award was entered by the Workers Compensation Director on January 26, 1988, in favor of the minor children against Mid-Continent Transport, Inc., and its compensation carrier, Bituminous Insurance Company. The award provided the boys with maximum benefits of $247 per week from the date of John Lemery's death until age 18, or age 23, provided certain statutory conditions were met. Funeral expenses were also ordered paid.

Garrison, as guardian for the minor boys, instituted a civil action against Buffalo Airways, Inc., the owner of the aircraft in which Lemery was riding at the time of his death. K.S.A. 1989

Supp. 44-504(b) allowed Mid-Continent to intervene as subrogee in that civil action and gave Mid-Continent a lien on any recovery by the minors to the extent of the workers compensation benefits paid.

Following discovery, Buffalo settled with the minor boys for $450,000. This settlement was approved by the court on March 31, 1989, and Buffalo was dismissed. After deducting litigation expenses of $6,584.87 from the total recovery, a one-third contingency attorney fee in the amount of $147,805.05 was also approved by the court.

The plaintiffs and Mid-Continent could not agree on each party's liability for attorney fees. A hearing was held to resolve two issues: (1) the attorney fees Mid-Continent should pay for plaintiffs' recovery of amounts paid as workers compensation benefits to the date of the civil settlement and (2) whether attorney fees and expenses should be paid on future credits from the settlement.

Mid-Continent stipulated that a one-third contingency fee was reasonable for the recovery of the amounts previously paid as workers compensation benefits, but did not stipulate that a one-third contingency fee was a reasonable attorney fee on future credits or that such fee was even allowable under K.S.A. 1989 Supp. 44-504(g).

Following oral argument, the court concluded that K.S.A. 1989 Supp. 44-504(g) requires Mid-Continent to pay attorney fees based not only on amounts previously paid as benefits, but also on future credits. Mid-Continent was ordered to pay $8,852.85 in attorney fees and expenses on the $26,770.95 lien recovery for benefits paid to the date of the settlement. On the issue of future credits, the district court concluded that Mid-Continent was responsible for its proportionate share of attorney fees and litigation expenses. However, since it is unknown how long the plaintiffs will remain eligible for workers compensation benefits, the total amount of future credits is uncertain. Therefore, Mid-Continent was ordered to send the plaintiffs a check for $85.95 for each week the plaintiffs are eligible for workers compensation benefits.

Mid-Continent timely appeals and we affirm.

Mid-Continent contends that K.S.A. 1989 Supp. 44-504 does not require it to contribute to attorney fees and litigation expenses beyond the date of plaintiffs' settlement with Buffalo and that the district court erred as a matter of law by construing the statute to require proportionate contributions beyond March 31, 1989.

The construction and interpretation of K.S.A. 1989 Supp. 44-504(g) is a question of law, subject to unlimited appellate review. *Pyeatt v. Roadway Express, Inc.,* 243 Kan. 200, 204, 756 P.2d 438 (1988).

K.S.A. 1989 Supp. 44-504 provides, in pertinent part:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid. . . .

"(c) . . . The court shall fix the attorneys' fees which shall be paid proportionately by the employer and employee in the amounts determined by the court.

. . . .

"(f) As used in this section, 'compensation and medical aid' includes all payments of medical compensation, disability compensation, death compensation, including payments under K.S.A. 44-570 and amendments thereto, and any other payments made or provided pursuant to the workers compensation act.

"(g) In any case under the workers compensation act in which the workers' compensation fund or an insurer or a qualified group-funded workers' compensation pool, as provided in K.S.A. 44-532 and amendments thereto, is subrogated to the rights of the employer under the workers compensation

act, the court shall fix the attorney fees which shall be paid proportionately by the workers' compensation fund, insurer or qualified group-funded workers' compensation pool and the worker or such worker's dependents or personal representatives in the amounts determined by the court based upon the amounts to be received from any recovery pursuant to an action brought under this section."

As Mid-Continent notes, K.S.A. 1989 Supp. 44-504(g) is applicable to the case at bar. In *Anderson v. National Carriers, Inc.*, 240 Kan. 101, 727 P.2d 899 (1986), the court concluded that the date of an employee's settlement or other recovery against a third-party tortfeasor is the date upon which the subrogation arises. 240 Kan. at 103-06. Therefore, the provisions of the Workers Compensation Act which were in effect on March 31, 1989, govern the disposition of this case.

No Kansas case has interpreted subsection (g). "In construing the Kansas Workmen's Compensation Act, we are guided by the general rules of statutory construction and interpretation. We are required to seek out and, as far as possible, give effect to the legislative intent." *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, Syl. ¶ 2, 689 P.2d 837 (1984).

"The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. Legislatures have encouraged the evolutionary elaboration of law by the courts through the deliberate enactment of highly generalized statutes. Therefore, in determining legislative intent, courts are not bound to an examination of the language alone but may properly look into the causes which impel the statute's adoption, the objective sought to be attained, the statute's historical background, and the effect the statute may have under the various constructions suggested. *In re Petition of City of Moran*, 238 Kan. 513, 713 P.2d 451 (1986)." *State v. Phifer*, 241 Kan. 233, 238, 737 P.2d 1 (1987).

K.S.A. 1989 Supp. 44-501(g) provides:.

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder."

An additional rule of statutory construction is appropriate in interpreting K.S.A. 1989 Supp. 44-504(g). "In interpreting the attorney fee provisions of the workers' compensation statutes, the

Kansas Supreme Court expressed concern about interpreting the statute to have a 'chilling effect upon the prosecution by the employee of his cause of action.' " *Anderson v. National Carriers, Inc.*, 11 Kan. App. 2d 190, 196, 717 P.2d 1068, *aff'd* 240 Kan. 101, 727 P.2d 899 (1986) (quoting *Nordstrom v. City of Topeka*, 228 Kan. 336, 341, 613 P.2d 1371 [1980]). Mid-Continent contends this rule of statutory construction has no place in the case at bar because, in *Nordstrom*, the court was concerned that the lack of apportionment of fees would have a "chilling effect" on plaintiff's willingness to bring a suit against a third-party tortfeasor. Mid-Continent contends *some* apportionment does not have a "chilling effect." Mid-Continent's contention that the rule in *Nordstrom* does not apply in this case does, at first hearing, have a surface plausibility. It appears the plaintiffs had a solid case against Buffalo and were able to settle for $450,000. The maximum amount plaintiffs could have received under workers compensation is $232,921. Plaintiffs netted $295,610.08 from their settlement with Buffalo. The fact they might not recover attorney fees from Mid-Continent was probably not a primary concern in the settlement. However, in less clear-cut cases, or in cases where the total damages draw closer to the amount the injured worker would recover under workers compensation, the apportionment scheme advocated by Mid-Continent would have a "chilling effect" on plaintiff's willingness to bring suit. An otherwise reasonable recovery from the tortfeasor could leave plaintiffs with less from the recovery than would be received from workers compensation. Therefore, the rule of construction announced in *Nordstrom* is applicable to the case at bar.

Mid-Continent contends the district court ignored the plain meaning of the words of K.S.A. 1989 Supp. 44-504(g): "amounts to be received from any recovery" and "judicially amended the statute to 'amounts to be received *and credits against future payments.*' " Mid-Continent claims it never took possession of an amount greater than $26,770.65.

Mid-Continent's argument appears to be based on the erroneous assumption that K.S.A. 1989 Supp. 44-504(g), when stating "amounts to be received from any recovery pursuant to an action brought under this section," is referring to the workers compensation insurer. It does not refer to the insurer but refers to a

recovery by the worker, or, as in this case, by the worker's dependents. Mid-Continent never actually "receives" any money from plaintiffs' settlement with Buffalo, but is only entitled to a lien on the amount recovered. As subrogee, Mid-Continent does not actually "recover" anything from Buffalo. Therefore, reading K.S.A. 1989 Supp. 44-504(g) in reference to the worker's recovery, the district court has discretion to determine the appropriate amount of attorney fees to be paid by the subrogated insurer based upon the amount the plaintiffs will receive from their tort claim recovery.

The district court's construction of K.S.A. 1989 Supp. 44-504(g) is consistent with the Supreme Court's interpretation of 44-504(c). In *Nordstrom*, the court concluded:

"In an action under K.S.A. 1979 Supp. 44-504 against a third party tortfeasor, the provision in 44-504(c) that '[t]he court shall fix the attorneys' fees which shall be paid proportionately by the employer and employee in the amounts determined by the court' applies both to actions brought by the employee under 44-504(b) and to actions brought by the employer under 44-504(c)." 228 Kan. 336, Syl. ¶ 4.

"K.S.A. 1985 Supp. 44-504(c) [now K.S.A. 1989 Supp. 44-504(c)] gives the trial court the discretion to fix attorney fees to be paid proportionately by the employer and the employee when either brings an action against a third-party tortfeasor." *Anderson*, 11 Kan. App. 2d at 196. "Abuse of discretion is defined as a decision by the trial court where no reasonable person would take the view adopted by the trial court." 11 Kan. App. 2d at 197.

The district court in this case did not abuse its discretion. Despite Mid-Continent's protestations, plaintiffs' action will save Mid-Continent a significant sum of money. Had plaintiffs merely taken the maximum possible workers compensation benefits, it would have amounted to $232,921. Mid-Continent's allotted portion of the attorney fees amounts to $49,268.35. It is not unfair that Mid-Continent contribute to the amount of attorney fees incurred by plaintiffs and which saved Mid-Continent from paying compensation benefits.

By adopting K.S.A. 1989 Supp. 44-504, the legislature has attempted to achieve two things: (1) to preserve an injured worker's cause of action against third-party tortfeasors and (2) to pre-

vent a double recovery by the employee from both the workers compensation fund and a third-party tortfeasor. It is also clear from the language of K.S.A. 1989 Supp. 44-504(c) and (g) that the legislature intended the courts to apportion expenses of recovery against third-party tortfeasors between the employee and the workers compensation fund or the insurer.

To allow Mid-Continent to pay only a small portion of the total attorney fees and litigation expenses will dissuade future injured workers from pursuing their claims against third-party tortfeasors. In addition, to permit Mid-Continent to enjoy the benefits of the plaintiffs' acts and not to require it to pay a portion of the expenses is a very unlikely determination of the legislative intent.

As Mid-Continent suggests, the plaintiffs' exhaustive review of cases from other jurisdictions is of limited precedential value. In *Nordstrom,* the court considered the value of cases from other jurisdictions concerning 44-504, and noted:

"The question is one of first impression before this court, although there are literally dozens of decisions from other jurisdictions which have considered the issue. . . . However, nearly all of the decisions from other jurisdictions are based upon the interpretation of the particular state statutes involved, none of which appear to be identical to ours, and therefore are not particularly helpful in answering the question before this court. We see nothing to be gained by an extensive recitation of the theories and rationales followed by other jurisdictions in deciding the question." 228 Kan. at 340.

However, a clear majority of other jurisdictions, when confronted with this same issue, have rejected Mid-Continent's interpretation.

"Since the employer's right of reimbursement extends not only to past compensation paid but to future liability, most courts have concluded that the employer's equitable share of the fees and costs involved in the employee's third-party recovery should be calculated on his total potential liability, rather than on past benefits actually paid." 2A Larson, Workmen's Compensation Law § 74.32(a)(4) (1989).

We conclude that the entire recovery settlement to plaintiffs from Buffalo constituted the proper basis for determination of attorney fees to be apportioned between the plaintiffs and the compensation insurer. The statute speaks in terms of "the amounts to be received from any recovery," and we can discern no rational basis upon which to limit the apportionment of fees to compensation payments already made by Mid-Continent. The

payment of the fees on a weekly basis as ordered by the trial court eliminates the possibility of Mid-Continent's paying its portion of fees after compensation is no longer due.

The trial court properly construed K.S.A. 1989 Supp. 44-504 and did not abuse its discretion in the apportionment of attorney fees and litigation expenses.

Affirmed.