HAROLD McGRANAHAN, *Appellee,* v. DONALD W. McGOUGH and UMTHUN TRUCKING COMPANY, *Defendants,* and BETTIS ASPHALT and CONSTRUCTION, INC., and NATIONAL INDEMNITY COMPANY, *Intervenors/Appellants.*

(820 P.2d 403)

Opinion filed October 25, 1991.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause, and *Ronald J. Laskowski,* of the same firm, was with him on the brief for intervenors/appellants.

*Kevin L. Diehl,* of Ralston, Buck, Hayden & Diehl, of Topeka, argued the cause and was on the brief for appellee.

*John M. Ostrowski,* of McCullough, Wareheim & LaBunker, P.A., of Topeka, was on the brief for *amicus curiae* Kansas AFL-CIO.

The opinion of the court was delivered by

ABBOTT, J.: This is a subrogation case wherein the employer and its insurance carrier are seeking to recover workers compensation benefits paid to an injured worker for injuries caused by a third-party tortfeasor. The third party settled with the injured employee. This appeal involves whether the employer and its insurance carrier are entitled to recover part of the settlement as subrogation for workers compensation payments made to the injured worker.

Bettis Asphalt and Construction, Inc., (Bettis) is the employer, and National Indemnity Company (National) is Bettis' insurance carrier. The injured employee is Harold L. McGranahan, and the negligent third party is Donald W. McGough, who was acting

in the scope of his employment as a truck driver for Umthun Trucking Company (Umthun).

On July 6, 1984, McGranahan was sitting in the driver's seat of a parked pickup truck when it was struck by an Umthun truck driven by McGough. At the time of the accident, McGranahan was working and on the job for Bettis. McGranahan suffered injuries to his right knee. He filed a workers compensation claim and received benefits totaling $12,616.29 that included $3,178 in temporary total compensation, $3,104.99 in medical expenses, and $6,330.30 for permanent partial disability.

McGranahan sued McGough and Umthun. The trial court allowed Bettis and National to intervene pursuant to K.S.A. 1990 Supp. 44-504(b).

On November 9, 1988, McGranahan, McGough, and Umthun entered into a stipulation and confession of judgment, providing:

"1. That an automobile accident occurred between plaintiff and defendant McGough on July 6, 1984, on the east Turnpike loop of I-70 in Topeka, Shawnee County, Kansas.

"2. That at the time of the accident, plaintiff was parked on the side of the road performing duties in the course of his employment with Bettis Asphalt and Construction Company, Inc.

"3. At the time of the accident, defendant McGough was operating a semi-tractor trailer during the course and scope of his employment with Umthun Trucking Company, and struck plaintiff's parked vehicle causing injury to plaintiff and causing plaintiff's vehicle to be a total loss.

"4. Plaintiff's left elbow and right knee sustained injury as a result of the collision. The injury to plaintiff's left elbow resolved in the few months following the accident.

"5. Plaintiff underwent arthroscopic surgery on January 10, 1985, and was found to have synovitis and debris on the medial aspect of the joint. Further, a large chondral defect on the lateral portion of the medial femoral condyle, approximately 1 to 1½ cm. in diameter, directly in the weight bearing line, was observed. Multiple small drill holes were placed in the area in an attempt to revascularize. Plaintiff was diagnosed as having post-traumatic degenerative changes in the knee. The natural history of post-traumatic degenerative changes in the knee are progressive and plaintiff was not expected to regain full extension nor to have a normal gait based upon the post-traumatic arthritis of the knee.

"6. Plaintiff was caused to incur medical bills in the amount of $3,104.99, and lost wages in the amount of $9,245.60.

"7. Plaintiff's wife, Liz McGranahan has been caused to incur loss of service as a result of the injury to plaintiff's knee in that plaintiff is unable to complete the yard work and maintenance work of the home and auto-

mobiles as he did prior to the accident. This loss of service for Liz Mc-Granahan will continue indefinitely into the future.

"8. Plaintiff has been caused to incur past and future pain and suffering in relation to the pain in his right knee that has been present since the date of the accident. Plaintiff also suffers from his knee giving away on occasion and walking with a limp. The pain in the right knee will continue indefinitely into the future.

"During the course of the litigation, defendant through a witness of the accident, asserted comparative fault on the plaintiff contending that plaintiff's vehicle was improperly parked into the roadway causing a hazardous condition to exist. Further, defendant contended that plaintiff's degenerative changes in his right knee preexisted the accident and were not caused in whole or in part by the accident.

"Plaintiff contended that plaintiff would be caused to incur future additional medical expenses related to his right knee condition including office evaluations, analgesics, nonsteroidal anti-inflammatory medications, and injections of the joint.

"Based on the above stipulations defendant seeks to confess judgment as follows; past and future pain and suffering, for plaintiff, Harold McGranahan $6,000.00; past and future loss of service for Liz McGranahan, $3,000.00 and $1,000.00 for reasonable and necessary medical expenses related to plaintiff's injury for a total of $10,000.00.

"Plaintiff and defendants advise the Court that they are willing to stipulate to these facts in order to provide a basis for the Court to enter judgment against defendants in favor of plaintiff.

"The parties stipulate that any such judgment shall merge all of plaintiff's claims that were raised or could have been raised herein into said judgment, and the parties agree that any such judgment merging all such claims, shall be treated by the parties as a conclusive and final disposition of all plaintiff's claims."

McGranahan, McGough, and Umthun presented the stipulation and confession of judgment to the trial court for approval. At the hearing, McGranahan's counsel stated:

"There will be, I am sure, a side issue to this, and that will be [counsel for intervenors] will be claiming that we will owe the entire judgment to the intervenor for a workmen's comp subrogation. It will be our contention that we do not owe them the subrogation based on the itemization of the judgment. The facts simply are this, are that the intervenor had an approximate $12,000 lien in this case; based on the facts developed through discovery I was very concerned that I couldn't even get a $12,000 judgment and that if I went ahead and did and got it all in medical and wages then I would have to end up doing all the work for the work comp carrier and my plaintiff would be sitting there holding the bag. So, we have stipulated to facts which I think are reasonable, under the circumstances, based upon the stipulations, and that way the work comp ,arrier can't force the plaintiff

to take the position he didn't want to take, but I think that will probably be briefed following this judgment."

Bettis and National objected to the trial court's approval of the stipulation, arguing that the purpose of the stipulation was to circumvent the subrogation statute. Counsel for intervenors pointed out that although McGranahan had received over $9,000 in compensation for lost wages, the stipulation provided no recovery for lost wages.

The trial court found that *based on the stipulated facts*, the judgment was fair, just, and equitable. The trial court entered judgment pursuant to the stipulation and confession of judgment.

The trial court allowed Bettis and National to recover the $1,000 in medical expenses less attorney fees of one-third. The trial court held that the settlement of $6,000 for pain and suffering and $3,000 for past and future loss of services to McGranahan's wife were not subject to subrogation. The trial court relied on the following statement in *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 196, 708 P.2d 533 (1985): "Had the settlement documents clearly stated a certain amount was specifically for these personal noncompensable losses and had such amount been supportable in fact (as opposed to an effort to circumvent the operation of the statute), a much stronger argument in support of claimant's position could have been made." The trial court found that this judgment stated a certain amount for noncompensable losses that were supportable in fact.

Bettis and National appealed. In *McGranahan v. McGough*, 15 Kan. App. 2d 24, 802 P.2d 593 (1990), the Court of Appeals reversed the trial court's decision denying subrogation by Bettis and National for the awards for pain and suffering and for loss of services. The Court of Appeals stated:

"To allow plaintiffs and defendants to specify a particular element of personal injury damage in their settlement so as to defeat subrogation of that award to the employer who has compensated the employee for that personal injury defeats the intent of K.S.A. 1989 Supp. 44-504. We believe that all elements of personal injury damages, including medical expenses, lost wages, disability compensation, pain and suffering, and loss of services, should be subject to subrogation." 15 Kan. App. 2d at 29-30.

Judge Brazil concurred with subrogating damages awarded for pain and suffering, but dissented to subrogating damages awarded

for loss of services. Judge Brazil reasoned that in an action for loss of services, the worker is seeking damages not recoverable under the act. Because the employer has paid nothing to the injured worker for loss of services, any recovery for loss of services should not be subject to subrogation. 15 Kan. App. 2d at 31.

This court granted McGranahan's petition for review.

The issue raised is one of statutory construction, *i.e.*, what did the legislature intend when it adopted K.S.A. 1990 Supp. 44-504(b) and, specifically, when it used the words "compensation and medical aid provided by the employer"?

That statute provides that the employer can recover workers compensation and pursue a remedy against a negligent third party subject to the subrogation rights of the employer. Subsection 504(b) reads:

"In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker *by* judgment, *settlement* or otherwise, *the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer* to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien." (Emphasis supplied.)

The *amicus curiae* brief suggests that K.S.A. 1990 Supp. 44-504(f) is significant. That subsection defines "compensation and medical aid" as follows:

"As used in this section, 'compensation and medical aid' includes all payments of medical compensation, disability compensation, death compensation, including payments under K.S.A. 44-570 and amendments thereto, and any other payments made or *provided pursuant to the workers compensation act."* (Emphasis supplied.)

As we read the italicized portion of 504(f), it appears to modify "any other payments" and thus not to apply to the rest of the paragraph. We deem this of no significance to the issue before us. The issue is whether the employer (its insurance carrier in this case) is reimbursed first out of any recovery or whether a judgment or settlement can be structured so that the injured employee can recover for losses not paid by the employer or its insurance carrier, even though this results in the employer not being reimbursed fully for workers compensation benefits paid to the employee.

The rules of statutory construction are well established. In *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987), this court stated:

"The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible."

The question in the case at bar concerns the extent of an employer's subrogation rights. "The extent and nature of the subrogation rights of an employer under the workmen's compensation statute are matters for legislative determination." *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, Syl. ¶ 1, 625 P.2d 472 (1981).

We have said many times the workers compensation act is complete in itself and we do not look outside the act for guidance. See *Hunter v. General Motors Corporation*, 202 Kan. 166, 172, 446 P.2d 838 (1968); *Leslie v. Reynolds*, 179 Kan. 422, 427, 295 P.2d 1076 (1956); *Denton v. Sunflower Electric Co-op*, 12 Kan. App. 2d 262, 269, 740 P.2d 98 (1987), *aff'd* 242 Kan. 430, 748 P.2d 420 (1988).

The language of K.S.A. 1990 Supp. 44-504(b) explicitly states the employer is allowed to subrogate to the extent the employer has paid compensation and medical aid. This indicates a recovery that is not compensable under workers compensation is not subject to subrogation. Subrogation is not allowed because the award does not duplicate the compensation and medical aid provided by the employer. *Subrogation is permitted to prevent double recovery by the employee.* This interpretation is consistent with a 1990 Court of Appeals case, *Lemery v. Buffalo Airways, Inc.*, 14 Kan. App. 2d 301, 307-08, 789 P.2d 1176, *rev. denied* 246 Kan. 767 (1990): "By adopting K.S.A. 1989 Supp. 44-504, the legislature has attempted to achieve two things: (1) to preserve an injured worker's cause of action against third-party tortfeasors and (2) to prevent a double recovery by the employee from both the workers compensation fund and a third-party tortfeasor." See also Kelly, *Survey of Kansas Law: Workers' Compensation*, 27 Kan. L. Rev. 377, 389 (1979) ("Double recovery has been pre-

vented by providing that in the event of recovery by the worker, the employer is subrogated to the amount of compensation payments made to the date of recovery . . . .").

The Court of Appeals stated that "all elements of personal injury damages, including medical expenses, lost wages, disability compensation, pain and suffering, and loss of services, should be subject to subrogation." 15 Kan. App. 2d at 30. If the legislature's intent in enacting K.S.A. 1990 Supp. 44-504 is, at least in part, to prevent double recovery by the employee, then the Court of Appeals' decision goes beyond preventing double recovery. Not all personal injury claims are compensable under workers compensation.

The Court of Appeals determined that

"[g]iven the history of 44-504, there is no question the legislature intended awards for personal injury to be subject to subrogation in situations similar to the one at bar. Pain and suffering damages are traditionally a portion of damages recoverable in personal injury actions. Indeed, Kansas courts have recognized this in considering subrogation rights in workers compensation cases. See, *e.g., Negley v. Massey Ferguson, Inc.,* 229 Kan. at 468 (in event employee recovers, employer is subrogated to extent of compensation paid by employer); *Houk v. Arrow Drilling Co.,* 201 Kan. at 91-92 (employer has lien of first proceeds from worker's tort action); *Moeser v. Shunk,* 116 Kan. 247, 252, 226 Pac. 784 (1924) (elements of damage include pain and suffering as well as financial loss.)" *McGranahan,* 15 Kan. App. 2d at 27-28.

Historically, workers compensation does not compensate directly an employee for pain and suffering. In *Welden v. Edgar Zinc Co.,* 129 Kan. 422, 283 Pac. 618 (1930), an employee was injured and received full compensation. The employee returned to work for the same employer, performed work of the same nature, and received the same wages. The employee brought an action for additional compensation because performing this work caused him pain and discomfort.

"The fact that he did this work with some discomfort and pain might have been an element of recovery in an ordinary action to recover damages for negligence. The compensation law is a marked departure from the theory of actions based on the wrongs or negligence of employers. It is based on the theory of taxing the industry for the loss sustained by accidental injury to a workman while employed in such industry, and compensation is to be paid regardless of the negligence of the employer or even the fault of the workman. The theory is that the compensation is to be measured not as

damages for pain and suffering, but for the loss sustained by the incapacity of the workman resulting from the accidental injury. . . . The industry is not to be taxed for accidental injuries beyond the workmen's loss of earning capacity measured as the statute provides.

. . . .

"An allowance for pain and suffering would be something in the nature of damages for the negligence or wrong of the defendant, which is inconsistent with the substituted remedy of compensation." 129 Kan. at 423-25.

Workers compensation does, however, compensate for pain and suffering if it interferes with the ability to perform labor. In *Trowbridge v. Wilson & Co.*, 102 Kan. 521, 170 Pac. 816 (1918), the plaintiff alleged that the pain induced by her injury prevented her from working. In upholding the plaintiff's claim, the Supreme Court stated:

"If pain brought about by an injury causes inability to labor, that pain is within the provisions of the workmen's compensation act, just the same as though some part of the body had been otherwise impaired to such an extent as to render the person unable to perform labor. Compensation for loss of wages, or for loss of ability to earn wages, although that loss may be caused by pain, is not the same as damages for the pain. The former comes within the workmen's compensation act; the latter does not." 102 Kan. at 523.

We have little difficulty in concluding that pain and suffering is such an integral part of determining work disability that any recovery for pain and suffering is subject to the subrogation rights of an employer pursuant to K.S.A. 1990 Supp. 44-504. The Court of Appeals did not err in so holding. This result follows the majority view. See 2A Larson, The Law of Workmen's Compensation § 74.35, 14-542 to -543 (1990) ("[I]t is quite clear . . . that the prevailing rule in the United States refuses to place an employee's third-party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering.").

There is no majority trend regarding the subrogation of loss of services awards.

"As to the question whether the carrier's lien extends to damages earmarked for loss of consortium, Michigan, Minnesota, and Wisconsin have held that it does not. Illinois has held that it does, and Indiana has done the same when the allocation to consortium was a transparent device to defeat the carrier's rights. The Wisconsin court also cautioned that vigilance

was necessary to prevent use of the consortium device to circumvent the carrier's lien." 2A Larson, § 74.36, 14-549 to -550.

If there is no third party to sue, the exclusive remedy of workers compensation bars an action for loss of services against the employer. *Fritzson v. City of Manhattan*, 215 Kan. 810, 813, 528 P.2d 1193 (1974).

It does not follow that because a claim is barred against an employer by a specific statute of the workers compensation act, a spouse of the injured worker cannot recover damages, which are not a part of the workers compensation payment, from a negligent third party free and clear of the employer's statutory right of subrogation for compensation and medical aid provided by that employer.

Loss of services to a spouse is similar to damage to personal property in that both are not items of compensation considered in making a workers compensation award. In the absence of legislative intent that they should be considered as "compensation and medical aid provided by the employer," we conclude that the legislature intended to limit the employer's subrogation rights under K.S.A. 1990 Supp. 44-504 to those items of damages that the employer compensated the employee pursuant to the workers compensation act. This result ensures that there will be no double recovery by the employee and that the employee and those privy will retain their right to damages for injuries negligently inflicted that are not compensable under the workers compensation act.

Both parties make much of the fact that the legislature amended some sections of the workers compensation act and failed to amend other sections, arguing that the amendments and the failure to amend are favorable to both positions. The fact that the legislature did not directly respond to the dicta in *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 708 P.2d 533 (1985), sheds no light on legislative intent. The legislature could have decided the dicta was of no import and concluded the court was stating that the employer received its money first from any recovery for an injury compensable under workers compensation. Alternatively, the legislature could have interpreted the opinion to mean that in the future, if a recovery was structured properly and supported by substantial competent evidence, the employer had no subrogation interest in payments or items awarded the injured

worker that were not considered in making the workers compensation award.

The right of action for loss of services is governed by K.S.A. 23-205, which provides, in part:

"Where, through the wrong of another, a married person shall sustain personal injuries causing the loss or impairment of his or her ability to perform services, the right of action to recover damages for such loss or impairment shall vest solely in such person, and any recovery therefor, so far as it is based upon the loss of impairment of his or her ability to perform services in the household and in the discharge of his or her domestic duties, shall be for the benefit of such person's spouse so far as he or she shall be entitled thereto."

Workers compensation laws are designed to compensate workers for their injuries. If the alleged element of damages is loss of services, the injured party is not the worker, but his or her spouse. In contrast, K.S.A. 23-205 states such an action vests solely in the injured party, but any recovery shall be for the benefit of his or her spouse. As noted above, if there is no third-party tortfeasor, a worker cannot sue an employer for loss of services because such action is barred by the exclusive remedy of workers compensation under K.S.A. 1990 Supp. 44-501(b). *Fritzson v. City of Manhattan*, 215 Kan. 810. There is no similar bar, however, when a worker sues a third party under the provisions of K.S.A. 1990 Supp. 44-504.

A worker's spouse is not compensated when the worker is injured. If an injured worker brings an action against a negligent third party for loss of services under K.S.A. 1990 Supp. 44-504 and K.S.A. 23-205, the worker is seeking damages not recoverable under the workers compensation act. Because the employer has paid nothing to the injured worker for loss of services, any recovery as a result of a loss of services action against a negligent third party is not subject to subrogation.

The dicta in *Houston*, 238 Kan. at 196, that "[h]ad the settlement documents clearly stated a certain amount was specifically for these personal noncompensable losses and had such amount been supportable in fact (as opposed to an effort to circumvent the operation of the statute), a much stronger argument in support of claimant's position could have been made," is stating that a finding must be supported by substantial competent evidence.

Here, the record before us contains stipulations and records supporting the trial court's conclusion that the injured worker and negligent third party made a "fair, just, and equitable" settlement. A question of causation and of comparative fault justified a settlement. While the evidence of loss of services is rather skimpy, we were not furnished a record of the hearing to determine the employer's right to subrogate. We have reason to doubt that any evidence was presented, but have no way to ascertain whether any concessions were made, etc. It does not appear the employer attempted to introduce any evidence showing that the spouse did not suffer a loss in the amount claimed and stipulated to or that the parties acted in bad faith in an effort to circumvent the employer's right of subrogation. The employer had a duty in this case to furnish a record showing the trial court erred in finding the settlement (judgment) was "fair, just, and equitable."

We affirm the trial court's determination that the award of $3,000 for past and future loss of services for the worker's spouse is not subject to subrogation, and we reverse the Court of Appeals' determination that it was. We reverse the trial court's determination that the award of $6,000 for past and future pain and suffering is not subject to subrogation by the employer and affirm the Court of Appeals determination that it is subject to subrogation. We remand to the trial court to award attorney fees to the employee's attorney for recovering the $6,000 for the employer's insurance carrier.

SIX, J., not participating.

MERSHON, JERRY L., District Judge assigned.

ALLEGRUCCI, J., concurring and dissenting: I concur with the majority that the award for past and future loss of services is not subject to subrogation. I do not agree with the majority that recovery for pain and suffering is subject to subrogation by the employer.

The majority correctly interprets K.S.A. 1990 Supp. 44-504(b) to allow an employer to be subrogated to that which is compensable under workers compensation. Subrogation by the employer is permitted if the recovery by the worker from a third party does duplicate the compensation and medical aid provided by the employer. As the majority notes: "Subrogation is permitted to prevent double recovery by the employee."

The majority then points out that, historically, pain and suffering is not compensable under workers compensation. Logic dictates the inquiry should stop there. If recovery is based upon that which is compensable under workers compensation and pain and suffering is not compensable, the logical conclusion is that recovery for pain and suffering is not subject to subrogation by an employer.

The majority, however, citing *Trowbridge v. Wilson & Co.*, 102 Kan. 521, 170 Pac. 816 (1918), for authority, concludes that workers compensation does compensate for pain and suffering if it interferes with the ability to perform labor. The decision in *Trowbridge* does not support such a conclusion. The award in *Trowbridge* was for loss of wages based on "four weeks' total incapacity for labor, and 208 weeks' partial incapacity." 102 Kan. 521. Trowbridge claimed loss of wages because the pain resulting from her injury prevented her from working, but she did not claim or recover damages for pain. The court clearly found that she did not recover for the pain suffered, reasoning that "[c]ompensation for loss of wages, or for loss of ability to earn wages, although that loss may be caused by pain, is not the same as damages for the pain." 102 Kan. at 523.

I would affirm the district court.