(913 P.2d 612)

No. 74,156 ■

ANA MARIA GUERRERO, *Appellee*, v. DOLD FOODS, INC., and
LIBERTY MUTUAL INSURANCE COMPANY, *Appellants*, and THE
KANSAS WORKERS COMPENSATION FUND, *Appellee*.

—

Opinion filed December 22,
1995.

*Douglas D. Johnson*, of Johnson & Kennedy, of Wichita, for appellants.

*Richard Sanborn*, of Sanborn & Mills, Chartered, of Wichita, for appellee Ana
Maria Guerrero.

*Vincent L. Bogart*, of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for
appellee Kansas Workers Compensation Fund.

Before BRAZIL, C.J., GERNON and ROYSE, JJ.

GERNON, J.: Dold Foods, Inc., (Dold) and its insurance carrier,
Liberty Mutual Insurance Company (Liberty), appeal an award by

the Workers Compensation Board (Board) to Ana Maria Guerrero. The award allowed a 43% permanent partial work disability.

Dold and Liberty argue that the disability finding is not supported by substantial competent evidence and that it was error not to assess any liability to the Kansas Workers Compensation Fund (Fund).

Guerrero worked for Dold for over 7 years, beginning in 1985. Her primary job function was packaging bacon. In 1992, she began experiencing pain in her arms and shoulders.

Guerrero sought medical attention from Dr. Melhorn, an orthopedic specialist, who operated on her for right carpal tunnel, right ulnar nerve elbow, and right medial epicondylitis. Epicondylitis is an inflammation of the humerus bone and the surrounding tissue. See Stedman's Medical Dictionary 521 (25th ed. 1990).

Dr. Melhorn assigned Guerrero a 10.35% permanent partial impairment of function to the right arm and restricted her work function to lifting no more than 35 pounds, 20 pounds frequently, and limited her repetitive tasks to no more than 30 minutes.

Guerrero was then given a job labeling and weighing bacon but was terminated after notifying her supervisor that the repetitive work was causing her problems. The basis for firing Guerrero, according to Dold, was her refusal to work within restrictions.

Guerrero was also examined by Dr. Bernard Poole, who found her permanently unfit for work involving repetitive motion and assigned her a 5% permanent partial loss of function to the body as a whole.

A personnel and human resources consultant concluded that Guerrero had suffered a 85% to 90% loss of access to her available labor market, coupled with a 45% loss of her ability to earn comparable wages in the open labor market.

The administrative law judge (ALJ) found that Guerrero sustained one injury which began in May 1992 and which was finalized on her last day of work. The ALJ stated:

"Determining that the Claimant has a partial work disability, the trier of fact has concluded that the Claimant has a work disability somewhere between 5% and 45%. The Claimant is not entitled to claim loss of ability to earn a comparable wage, because she demonstrated she had the ability to return to some jobs at Dold

at a comparable wage. Although the Claimant and the employer could not agree on a job which was satisfactory to both sides, the Claimant's medical restrictions clearly prohibit her from fully accessing the open labor market. Therefore, the Claimant is entitled to be compensated for a partial disability based upon her labor market losses.

"In concluding that the Claimant has a 25% work disability, the trier of fact has taken into consideration, the fact that the Claimant did not fully cooperate with Dr. Melhorn and the employer in making a good faith effort to return to work. In addition, the employer failed to work with the Claimant by eliminating the labeling position, which was too repetitive in nature according to Dr. Melhorn. These events culminated and led to the involuntary separation of the Claimant from her employment. Therefore, the Claimant under these facts, is entitled to a partial work disability of 25%."

On review, the Board affirmed the ALJ's decision and awarded Guerrero a 5% functional impairment up to the last day she worked and a 43% work disability from then on. Based on that finding, she was entitled to permanent partial impairment and permanent partial general disability benefits. The Board also found that the Fund was not liable. Dold and Liberty appeal these findings.

## Substantial Competent Evidence

The 1993 workers compensation amendments limited review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). Whether the Board's findings of fact are supported by substantial competent evidence (K.S.A. 77-621[c][7]) is a question of law. See *Tovar v. IBP, Inc.*, 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991).

The relevant scope of review is set forth in K.S.A. 77-621(c)(7):

"(c) The court shall grant relief only if it determines any one or more of the following:

. . .

7. the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

" 'Substantial evidence' is evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved." *Kansas Racing*

*Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 365, 770 P.2d 423 (1989).

This court may not reweigh the evidence presented at the agency hearing or determine the weight or credibility of the witnesses' testimony. *City of Wichita v. Employment Security Bd.,* 13 Kan. App. 2d 729, 733, 779 P.2d 41 (1989).

Among the Board's findings were as follows:

"The Administrative Law Judge found, and the Appeals Board agrees, that claimant could have performed one or more of the positions offered at Dold Foods. These positions were comparable wage positions and, accordingly, the Appeals Board finds a zero percent (0%) loss of ability to earn a comparable wage.

"The Appeals Board finds, however, that the reduction of ability to obtain employment in the open labor market has been significantly impaired. The only testimony in the record is that of Mr. Hardin, and he testifies to his opinion that claimant would have an eighty-five to ninety percent (85-90%) loss of access to the open labor market on the basis of either Dr. Poole's or Dr. Melhorn's restrictions. The Appeals Board considers this evidence sufficient to overcome the presumption against work disability and finds claimant has, in fact, suffered an eighty-five percent (85%) loss of ability to obtain employment in the open labor market. As authorized in *Hughes v. Inland Container Corp.,* 247 Kan. 407, 799 P.2d 1011 (1990), the Appeals Board considers it appropriate in this case to give equal weight to the loss of ability to earn a comparable wage and the loss and reduction of ability to obtain employment in the open labor market. On that basis, the Appeals Board finds claimant has a forty-three percent (43%) permanent partial general disability."

Dold relies on *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, 887 P.2d 140. (1994), *rev. denied* 257 Kan. 1091 (1995).

In *Foulk,* the claimant was placed on work restrictions after suffering a back injury. In response, the employer offered the claimant a different job within her restrictions, at the same rate of pay, but the claimant rejected the offer. On appeal, the claimant argued that the presumption of no disability under K.S.A. 1988 Supp. 44-510e(a) did not apply to her because she was not engaged in a job that paid comparable wages.

This court rejected Foulk's argument, noting: "To construe K.S.A. 1988 Supp. 44-510e(a) as claimant suggests would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage." 20 Kan. App. 2d at 284.

The key word in that ruling, "refusal," distinguishes *Foulk* from the case before us. In *Foulk*, the claimant never attempted to perform the new job offered by the employer. In this case, Guerrero attempted to work within her work restrictions. Moreover, Dr. Melhorn notified Dold that Guerrero's new job assignment was repetitive and increased her chances of further injury.

We conclude that the Board properly considered Guerrero's ability to perform work in the open labor market and her ability to earn comparable wages. See K.S.A. 1992 Supp. 44-510e(a); *Hughes v. Inland Container Corp.*, 247 Kan. 407, 422, 799 P.2d 1011 (1990). The Board then averaged the two figures to reach a disability percentage. See *Schad v. Hearthstone Nursing Center*, 16 Kan. App. 2d 50, 53, 816 P.2d 409, *rev. denied* 250 Kan. 806 (1991). As long as the two statutory factors were considered, we cannot say the Board erred in the method it used in awarding a 43% work disability to Guerrero. See *Hughes*, 247 Kan. at 422; *Schad*, 16 Kan. App. 2d at 53.

## Fund Liability

K.S.A. 1992 Supp. 44-567(a) provides that an employer who knowingly employs or retains a handicapped employee shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

"(1) Whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director awards compensation therefor and finds the injury, disability or the death resulting therefrom probably or most likely would not have occurred but for the preexisting physical or mental impairment of the handicapped employee, all compensation and benefits payable because of the injury, disability or death shall be paid from the workers' compensation fund.

"(2) Subject to the other provisions of the workers compensation act, whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director finds the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the director shall determine in a manner which is equitable and reasonable the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment, and the amount so found shall be paid from the workers' compensation fund."

In order to be relieved of liability, the employer must prove either that the employer had knowledge of the preexisting impairment at the time the employer employed the handicapped employee or that the employer retained the handicapped employee in employment after acquiring such knowledge. K.S.A. 1992 Supp. 44-567(b). "The employer's knowledge of the preexisting impairment may be established by any evidence sufficient to maintain the employer's burden of proof with regard thereto." K.S.A. 1992 Supp. 44-567(b).

In affirming the ALJ's decision, the Board found:

"The Kansas Workers Compensation Fund becomes liable when the respondent employs or retains the individual with knowledge of a handicap and then the handicap contributes to subsequent disability arising out of and in the course of employment. In this case the Appeals Board finds the claimant has not suffered two separate accidents, but, instead, a series of mini-traumas which, in effect, constitute an injury over a period of time ending with the last date of employment. See *Berry v. Boeing*, Case No. 71,001 (1994). In addition, the testimony from Dr. Melhorn relating to contribution does not reflect a percentage of contribution after respondent had knowledge of the handicap. For these two reasons the Appeals Board finds that the respondent has not established the prerequisites for imposing liability on the Kansas Workers Compensation Fund."

The ALJ had found:

"In the instant case the employer has failed to meet its burden of proving known retention of a handicapped employee. The employer asserted all along that the Claimant had a scheduled injury limited to the right extremity. The employer cannot now come forth and claim they knew all along the employee had a bilateral problem due to overcompensation."

Dold had the burden of proving knowledge of a handicap to relieve itself of liability under the Workers Compensation Act. Therefore, a finding that it introduced no evidence to show such knowledge is a negative finding indicating that it failed to sustain its burden of proof on this issue.

"Our scope of review on appeal of a negative finding is to the effect that such a finding will not be disturbed absent proof of an arbitrary disregard of undisputed evidence, or some extrinsic circumstance such as bias, passion, or prejudice." *Duncan v. City of Osage City*, 13 Kan. App. 2d 364, 369, 770 P.2d 843, *rev. denied* 245 Kan. 783 (1989); see *Carter v. Kansas Gas & Electric Co.*, 5

Kan. App. 2d 602, 606, 621 P.2d 448 (1980), *rev'd on other grounds Denton v. Sunflower Electric Co-op*, 242 Kan. 430, 748 P.2d 420 (1988).

Affirmed.