(740 P.2d 98)

No. 59,925

RONALD E. DENTON, *Claimant,* v. SUNFLOWER ELECTRIC COOPERA-
TIVE, *Respondent/Appellee,* and HOME INDEMNITY COMPANY,
*Insurance Carrier/Appellee,* and KANSAS WORKERS' COMPENSA-
TION FUND, *Appellant.*

Opinion
filed July 16, 1987.

*Brock R. McPherson,* of McPherson, Bauer, Pike & Pike, Chtd., of Great Bend,
for appellant.

*Harry Bleeker,* of Turner and Boisseau, Chartered, of Great Bend, for ap-
pellees Sunflower Electric Cooperative and Home Indemnity Company.

Before ABBOTT, C.J., REES and BRISCOE, JJ.

REES, J.: This is a workers' compensation case in which the
Workers' Compensation Fund (Fund) challenges that part of a
district court judgment that, pursuant to K.S.A. 44-567(a)(A),
relieved Sunflower Electric Cooperative (Sunflower) of liability
for compensation awarded to claimant Ronald E. Denton and
ordered that the Fund pay the entire award. Although a notice of
appeal was served and filed by Denton, his appeal has been
abandoned by his failure to docket it and to file a brief.

Underlying this litigation is an on-the-job accident experi-
enced by Denton on May 21, 1983, at an electric power generat-
ing plant at Garden City, Kansas. Denton, an operating depart-
ment shift foreman employed by Sunflower, the plant operator,
suffered a herniated lumbar disc as a result of the accident.
Post-accident medical examination and review of 1978 and 1980
x-rays resulted in physicians' objective findings of preexisting
lumbosacral degenerative disc disease that had afflicted Denton
since at least as early as 1978.

In support of its first issue (see Supreme Court Rule 6.02[c],

235 Kan. lxviii), and without identification of focal points, the Fund broadly argues that Sunflower did not prove that when Denton sustained personal injury by accident arising out of and in the course of his employment on May 21, 1983, he was a handicapped employee Sunflower had retained in its employ after it had acquired knowledge that he was afflicted with a physical impairment. We do not see that the Fund argues that Denton did not sustain compensable injury or that he had no preexisting impairment. Rather, the Fund appears to argue that it was not proved that prior to the May 21, 1983, accident Denton was retained in Sunflower's employ after Sunflower acquired knowledge that Denton was afflicted with an impairment of requisite character to support a finding that he was a handicapped employee. With no more than a scintilla of reasoned supporting argument, the Fund also argues there was insufficient proof to support a shift to the Fund of liability for Denton's compensation for the reason that there was no evidence that Denton was retained by Sunflower with "mental reservation."

As to the Fund's first issue, we are to decide (1) whether there was evidence upon which the district court could conclude that, prior to May 21, 1983, Sunflower had retained Denton in its employ after acquiring knowledge of preëxisting impairment of such character that he was a handicapped employee; (2) whether it was essential to Sunflower's claim for relief from liability for Denton's compensation that Sunflower prove that it retained Denton in its employ with "mental reservation"; and (3) if retention with "mental reservation" was required, whether it was proved. If our answer to the second question is "no," we need not address and answer the third and last question.

To be relieved of liability for payment of all compensation awarded to Denton, it was necessary that Sunflower come within the operation of the following language of K.S.A. 44-567:

"(a) An employer . . . who knowingly . . . retains a handicapped employee, as defined in K.S.A. 44-566 . . . shall be relieved of liability for compensation awarded . . . as follows:

"(A) Whenever a handicapped employee is injured . . . and . . . the injury . . . probably or most likely would not have occurred but for the preexisting physical or mental impairment of the handicapped employee, all compensation and benefits payable because of the injury . . . shall be paid from the workers' compensation fund.

. . . .

"(b) In order to be relieved of liability under this section, the employer must prove . . . that the employer retained the handicapped employee in employment after acquiring [knowledge of the preexisting impairment]. The employer's knowledge of the preexisting impairment may be established by any evidence sufficient to maintain the employer's burden of proof with regard thereto."

When K.S.A. 44-567(b) speaks of "the employer's burden of proof," reference is made to the employer's burden "to persuade the trier of facts by a preponderance of the credible evidence that [the employer's] position . . . is more probably true than not true." K.S.A. 44-508(g). Thus, it was Sunflower's burden to prove its claim for relief from liability (*Scott v. Day and Zimmerman, Inc.*, 215 Kan. 782, 787, 529 P.2d 679 [1974]) by a preponderance of the evidence; it was not necessary that Sunflower prove its claim by clear and convincing evidence or beyond reasonable doubt.

Who is a "handicapped employee" as that term is used in K.S.A. 44-567? The definition is in K.S.A. 44-566(b), which states:

" 'Handicapped employee' means [an employee] afflicted with or subject to any physical or mental impairment, . . . whether congenital or due to an injury or disease of such character the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining reemployment if the employee should become unemployed . . . ."

Otherwise put, a "handicapped employee" is an employee who is at disadvantage in obtaining employment or reemployment because of physical or mental impairment with which he or she is afflicted or to which he or she is subject. An employee is not a handicapped employee if he or she is not afflicted with or subject to an impairment. An employee afflicted with or subject to an impairment is not a handicapped employee if he or she is not at disadvantage in obtaining employment or reemployment because of the impairment.

What is the meaning of the word "impairment" as it is used in K.S.A. 44-566(b) and K.S.A. 44-567? From the wording "physical or mental impairment . . . whether congenital or due to an injury" in K.S.A. 44-566(b), it is clear that "impairment" and "injury" are not synonymous. What is the distinction? Seeing that K.S.A. 44-508(e) directs that "injury" means a lesion or change in the physical structure of the body causing damage or

harm thereto, we conclude that the word "impairment" in the phrase "physical or mental impairment" connotes limitation of function. See, for example, *Rork v. Szabo Foods*, 439 N.E.2d 1338, 1342 (Ind. 1982); *Talas v. Correct Piping Co., Inc.*, 435 N.E.2d 22, 26 (Ind. 1982).

We pause to observe that reported Kansas appellate opinions in workers' compensation cases display instances of imprecision in the use of certain words, among which are "injury," "impairment," and "handicap" or "handicapped."

In summary, K.S.A. 44-567(a) dictates that shifting compensation liability to the Fund is authorized only if the compensation recipient was an employee hired or retained by the employer with knowledge that the employee was a handicapped employee. K.S.A. 44-567(b) emphasizes that liability shifting under the authority granted by K.S.A. 44-567(a) requires that it be proved that hiring or retention of the employee occurred after the employer acquired knowledge of (knew of) an impairment causing the employee to be a handicapped employee, that is, hiring or retention with knowledge of the employee's functional limitation putting him or her at disadvantage in obtaining employment or reemployment.

Within the evidence before the district court in this case, there was particular testimony of one Don Erwin and Denton that we find to have controlling effect when considered together with, and in light of, the physicians' objective findings. We will report the testimony as it appears in the record on appeal.

Erwin, Sunflower's operations supervisor at the Garden City plant, testified as follows:

"A.  [Denton] came to. work in 1960 . . . I have known him ever since . . . .

. . . .

"A.  . . . He started out as a second operator . . . then went to first operator, and then I believe it was in 1973 . . . that he was promoted to shift foreman, and he stayed in that position until he was laid off August 31, 1984.

. . . .

"Q.  . . . [W]ere you his direct supervisor in May of 1983?
"A.  Yes.
"Q.  . . . [H]e didn't answer to anybody else but you?
"A.  Me or the plant superintendent. .

. . . .

"Q. When [the May 21, 1983] accident occurred, is that the first time that you ever knew of any problems that Mr. Denton had with his low back?

"A. No, he's had low back problems for—my records show back at least five years.

"Q. Back to?

"A. 1978 was the first that I have records to show.

"Q. . . . Did he have other complaints of his back where he would have to miss time from work because of it?

"A. Yes, from time to time he would strain his back, always have a day or two off, and usually he would get over it and get back to work.

"Q. Do you know how many days, say in the five years prior to May 21, 1983, that Mr. Denton would have missed work because of back problems?

. . . .

"A. I can total up eighteen days prior to the accident, going back to June of 1978.

"Q. . . . [Y]ou are referring to some notes . . . ?

"A. Yes, these are notes that I took off of the shift foreman's logs. There could have been more, but these are the only ones that were indicated as specific back trouble.

"Q. Do you have any personal recollection of the fact that Mr. Denton had back problems prior to May 21, 1983?

"A. Yes.

"Q. And that he missed work as a result of it?

"A. Yes.

. . . .

"Q. . . . [Y]ou say [your notes show] as far back as 1978?

"A. I just have down here, 'back trouble.' These I got off the shift foreman's logs, when he called in he was taking off sick for back troubles.

. . . .

"Q. . . . [O]f your own independent knowledge, do you recall that Mr. Denton did have back problems prior to the May, 1983 incident?

"A. Yes.

"Q. Of your own personal recollection, how far back can you recall that Mr. Denton would have had back problems?

. . . .

"A. I would personally say it went back further than '78. It seems like to me it's been considerably longer than that, probably a ten year period, off and on.

"Q. . . . As Mr. Denton's supervisor, were you concerned as to whether he would be able to perform his job duties, or be more susceptible to injury because of his back condition?

"A. Yes, I think so. I think we were concerned about his back problem, but since it wasn't consistent—you know, he would have a few days off and he would get back to work, and maybe for two or three months no problem, and then maybe he would strain himself again; and yes, I think we were

susceptible to the knowledge that he could injure his back from doing certain things, you know.

"Q.   That he was more susceptible to that type of thing?

"A.   Yes, definitely.

. . . .

"Q.   Mr. Denton never told you there were certain things, such as bending or lifting, he couldn't do, did he?

"A.   Not specifically, no.

"Q.   He never told you any doctor had told him not to do those things before May 21st of '83?

"A.   Well now, there was some times there when he was having trouble with his back that . . . we probably did make some exceptions there from time to time, because this back thing went on so long.

. . . .

"Q.   During the time that he was employed under you, did he satisfactorily perform all of his duties?

"A.   Pretty well.

. . . .

"A.   . . . [I]n spite of his physical disabilities, he done a pretty good job."

Denton's testimony included this:

"Q.   . . . [D]escribe for me the injury you received prior to this accident?

"A.   I never really received any injury. I just had muscle spasms in my back . . . .

. . . .

"Q.   Your employers out there, who were your supervisors?

"A.   Jim Owens and Don [Erwin].

"Q.   And they were aware you were having muscle spasms?

"A.   Yeah, they've known it over the years that I've had back trouble.

. . . .

"Q.   [Over the years] you have taken sick leave as a result of the muscle spasms?

"A.   Right.

. . . .

"Q.   . . . [Y]our supervisors out at Sunflower, Mr. [Erwin], they were aware of the fact that you were having back problems before, and you had taken off and seen a doctor?

"A.   They sure did."

Indisputably, Denton's disc disease was an injury, that is, a damaging or harmful change in the physical structure of the body, that existed from at least as early as 1978, some five years prior to his May 21, 1983, accident. Due to that injury, was Denton afflicted with an impairment of such character that it constituted a handicap in obtaining employment or reemployment? Otherwise phrased, was Denton, due to his disc disease,

afflicted with a functional limitation that put him at disadvantage in obtaining employment or reemployment? If he was, then, according to K.S.A. 44-566(b), he was a handicapped employee. Beyond any real doubt, these posited questions are fact questions which were for resolution by the district court, the trier of facts here.

The evidence discloses that throughout the five or more years immediately preceding the May 21, 1983, accident and throughout which Sunflower retained Denton in its employ, Sunflower knew Denton had functional limitation involving his back. Although describing the manifestations of his limitation as "muscle spasms," Denton directly testified that his supervisors had known over the years that he had "back trouble" and had taken sick leave to obtain medical care. Business records of Sunflower's corroborated that it had that knowledge. Sunflower's knowledge also was established by the testimony of Denton's supervisor. Based upon the record on appeal, it is beyond any serious doubt that Sunflower had knowledge Denton was afflicted with preexisting impairment when and while it retained Denton in its employ prior to May 21, 1983. The Fund has proffered to us no thesis upon which to find to the contrary.

It is correct to note that even though the evidence established that Sunflower had knowledge that Denton had "low back problems," "back strain," "back trouble," and "muscle spasms" for which he took sick leave on irregular occasions to obtain medical care, there was no evidence that Sunflower knew that Denton was afflicted with lumbosacral degenerative disc disease. Nonetheless, it is not necessary that the employer's knowledge be of the particular and medically specific injury, that is, the lesion or physiological change, giving rise to the employee's functional limitation. As shown by the language of K.S.A. 44-567, the requisite knowledge is knowledge of handicap causing functional limitation. The evidence abundantly established that Sunflower retained Denton in its employ after having acquired knowledge (knowing) of preexisting impairment.

Did Denton's impairment put him at disadvantage in obtaining employment or reemployment? While there was no specific direct evidence that it did, we are satisfied that, as to this particular question of fact, the district court's necessarily implicit

conclusion that it did was a justified inference. There was no evidentiary suggestion to the contrary and the Fund has presented no reason to hold otherwise.

Trial court error is never presumed. To obtain appellate reversal of a judgment, it is an appellant's burden to make it affirmatively appear that the judgment is erroneous. *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 602, 647 P.2d 1268 (1982); *Kohn v. Babb,* 204 Kan. 245, 248, 461 P.2d 775 (1969). The Fund has failed to affirmatively establish that the evidence before the district court was insufficient to prove that, when Denton sustained personal injury by accident arising out of and in the course of his employment on May 21, 1983, he was a handicapped employee Sunflower had retained in its employ after it had acquired knowledge that he was afflicted with a physical impairment of requisite character to constitute a handicap in obtaining employment or reemployment.

Turning to the question whether it was essential to Sunflower's claim for relief from liability for Denton's compensation that Sunflower prove that it retained Denton in its employ with "mental reservation," it is proper to bear in mind that the Workmen's Compensation Act (K.S.A. 44-501 *et seq.*) is complete within itself; enlargement upon its plain terms is impermissible. *Allen v. Mills,* 11 Kan. App. 2d 415, 419-20, 724 P.2d 143 (1986) (Rees, J., concurring).

Nowhere in K.S.A. 44-567, K.S.A. 44-566(b), or elsewhere in the Act does there appear an expressed or implied requirement for shifting of compensation liability that the impairment be "demonstrably disabling" when the handicapped employee is hired or retained. Nothing is statutorily required beyond or other than that the employee be afflicted with or subject to a handicap causing impairment and that that be known to the employer.

Neither is there in K.S.A. 44-567, K.S.A. 44-566(b), or elsewhere in the Act an expressed or implied requirement for shifting of compensation liability that the employer's hiring or retention of the handicapped employee be conditional or qualified. There is no requirement that the employer act with reservation when hiring or retaining the handicapped employee; there is no requirement that in deciding to hire or retain the

handicapped employee the employer must have acted with a reservation in its mind.

By arguing in its brief that Sunflower's evidence was insufficient because it failed to demonstrate that Sunflower retained Denton in its employ with mental reservation, the Fund points to a supposed principle that some workers' compensation practitioners have inferred from certain language in the text and syllabi of *Ramirez v. Rockwell Int'l*, 10 Kan. App. 2d 403, 701 P.2d 336 (1985); *Hines v. Taco Tico*, 9 Kan. App. 2d 633, 683 P.2d 1295 (1984); *Carter v. Kansas Gas & Electric Co.*, 5 Kan. App. 2d 602, 621 P.2d 448 (1980); *Oates v. Post & Danley Truck Lines*, 3 Kan. App. 2d 337, 594 P.2d 684 (1979), recent opinions of this court. Representative of the language of which we speak is this: "[An] impairment need not be demonstrably disabling *as long as it gives rise to a reservation in the mind of an employer* when deciding whether to hire or retain [an] employee." (Emphasis added.) *Carter*, 5 Kan. App. 2d at 606.

It is a mistaken inference that we have announced the principle, or rule, that for an employer to be relieved of liability for payment of compensation as authorized by K.S.A. 44-567, it is necessary that the employer prove *not only* that when it hired or retained the employee it knew the employee was handicapped, *but also* that the employer had mental reservation when deciding to hire or retain the employee.

*Johnson v. Kansas Neurological Institute*, 240 Kan. 123, 727 P.2d 912 (1986), is the most recent Kansas appellate opinion of which we are aware where reference is made to the so-called mental reservation concept. It is the only Supreme Court opinion of which we are aware that refers to that concept. On its face and as indicated by the text of the Supreme Court's syllabus, it is patent that that court's chief concern was this court's selection of the dispositive issue when the case was before us (see *Johnson v. Kansas Neurological Institute*, 11 Kan. App. 2d 161, 716 P.2d 598 [1986]). This is what the Supreme Court had to say about the mental reservation concept in its opinion:

"The Director ruled that there was not sufficient evidence to show that [KNI] had retained a handicapped worker. . . . [T]he district court . . . affirmed the Director's decision. . . .

. . . .

". . . The Director found that . . . since Johnson's preexisting disability was

not demonstrably disabling, KNI had the burden of persuasion that it had a reservation when it retained the handicapped employee. [The Director found] no evidence of such reservation . . . .

". . . KNI appealed the finding that it had not shown reservations about retaining the handicapped claimant. . . .

. . . .

"[T]he Court of Appeals erred when it disregarded the 'reservation' issue . . . .

. . . .

"KNI contends that the district court erred in holding that the Fund was not liable for any of the award, as KNI had failed to show a 'reservation with respect to hiring or retaining the claimant.'

. . . .

". . . The record supports the finding that KNI had no reservation when it retained Johnson as an employee.

"Next, KNI argues that the court should overthrow the reservation concept . . . . This issue was not raised below and, therefore cannot be considered. [Citation omitted.]." 240 Kan. at 124-28.

The text of *Johnson* reveals that the " 'reservation' issue" sought to be raised by the employer was whether "the district court erred in holding that the Fund was not liable for any of the award, as [the employer] had failed to show a 'reservation with respect to hiring or retaining the claimant.' " Inasmuch as the Supreme Court determined that the employer's appeal was from "the finding that [the employer] had not shown reservations about retaining the handicapped claimant," the Supreme Court's decision was only that "the record supports the finding that [the employer] had no reservation when it retained [the claimant] as an employee." The Supreme Court did not decide whether it was essential to the employer's claim for relief from liability for the claimant's compensation that it prove that it retained the claimant with mental reservation. Further, the Supreme Court expressly declined consideration of an argument of the employer that the "reservation concept" should be overthrown. The Supreme Court resolved only one question: whether there was evidence to support the district court finding that the employer had no reservation in its mind when deciding to retain the claimant in its employ. The Supreme Court did not address itself to the propriety of the finding of the Director, adopted by the district court, that "[the employer] had the burden of persuasion that it had a reservation when it retained the [claimant]." Had it

done so or had it considered the employer's argument that the reservation concept should be overthrown, then, it would have been for the Supreme Court to determine whether there is a "reservation concept," that is, whether in all cases, in no cases, or in some cases, for example, where the impairment is "not demonstrably disabling" (whatever that may be), it is essential to successful prosecution of a claim for shifting of compensation liability under K.S.A. 44-567 that the employer prove that in hiring or retaining the handicapped employee it acted with reservation. Our conclusion and holding, as we have expressed, is that in no case is it essential to compensation liability shifting that the employer had mental reservation when hiring or retaining the employee. Nothing said by the Supreme Court in *Johnson* is to the contrary.

The genesis of "reservation in the mind of the employer" opinion and syllabi language appears to be the director's review order in *Oates v. Post & Danley Truck Lines*, 3 Kan. App. 2d 337. In that case, a district court judgment shifting compensation liability was affirmed. Oates' preexisting impairment was a congenital arteriovenous malformation previously manifested by a cerebral vascular accident. The *Oates* opinion gives no indication that either Oates or the employer had knowledge of the arteriovenous malformation; the opinion reveals only that by Oates' employment physical examination report it was made known to the employer that Oates had recently suffered a cerebral vascular accident. In the opinion it is said that whether knowledge of a particular accident or injury is sufficient to serve as knowledge of a handicap causing impairment is a fact question to be decided on a case by case basis. 3 Kan. App. 2d at 339. *Oates* noted that "cerebral vascular accident" is listed in K.S.A. 44-566(b) as one of the specific diseases or conditions by reason of which a handicap causing impairment may be due. The dispositive substance of the *Oates* decision was that the employer's knowledge that prior to his hiring the employee had suffered a cerebral vascular accident was sufficient knowledge to satisfy the requirement that the employer have knowledge of a preexisting handicap causing impairment.

In *Carter v. Kansas Gas & Electric Co.*, 5 Kan. App. 2d 602, the claimant had preexisting degenerative cervical disc disease.

The essential question at issue on appeal was whether the employer's pre-accident knowledge that the claimant was afflicted with a handicap causing impairment had been proved by evidence of the employer's knowledge of past muscle spasms and past complaints of neck pain, numbness, blurry vision, and dizziness incidental to which the claimant had missed no work. The trial court's finding that the employer failed to sustain its burden to prove that it had knowledge of an impairment of such nature as to constitute the claimant "handicapped" and its refusal to shift to the Fund liability for payment of the awarded compensation were affirmed.

*Hines v. Taco Tico*, 9 Kan. App. 2d 633, is a case in which the trial court's finding that the employer hired the claimant knowing she was afflicted with a handicap causing impairment was reversed on appeal. Although Syl. ¶ 3 of *Hines* makes the statement that "[a]n impairment need not be demonstrably disabling as long as it gives rise to a reservation in the mind of an employer in deciding to hire or retain the employee," that rule was of no materiality in the appellate disposition of the case. Instead, the appellate disposition of *Hines* is correctly described as follows: Where the employer knew of a prior accident and injury, but neither the employer nor the employee knew of the employee's impairment existing when the employee was hired or retained, the Workers' Compensation Fund could not be held liable. See 9 Kan. App. 2d 633, Syl. ¶ 4.

In *Ramirez v. Rockwell Int'l*, 10 Kan. App. 2d 403, the claimant was retained in the employer's employ after having sustained an accidental fracture of his patella. Although nothing appears that reflects that either the claimant or the employer knew that after recuperation the patella remained unhealed and he therefore was afflicted with that particular physiological defect, it was held that the employer's knowledge of handicap causing impairment was supported by evidence that the employer had knowledge of an orthopedic surgeon's findings of permanent partial disability of the lower extremity and tenderness, discomfort, and pain from various activities as well as knowledge of complaints by the claimant of pain in his knee. The trial court's shifting of compensation liability was affirmed.

Statements in judicial opinions or syllabi thereof always must

be read and interpreted in light of the facts and questions involved in the case decided. *Ellis v. Union Pacific R. R. Co.*, 231 Kan. 182, 185, 643 P.2d 158 (1982); *McKinney, Administrator. v. Miller*, 204 Kan. 436, 437, 464 P.2d 276 (1970); *Wenzel Machinery Rental & Sales Co. v. Adkins*, 189 Kan. 435, 438-39, 370 P.2d 141 (1962); *Ives v. Kansas Turnpike Authority*, 184 Kan. 134, 144, 334 P.2d 399 (1959); *Steck v. City of Wichita*, 182 Kan. 206, 209, 319 P.2d 852 (1958); *State v. Six Slot Machines*, 166 Kan. 361, 365, 201 P.2d 1039 (1949); *Hartman v. Nordquist*, 8 Kan. App. 2d 213, 214-15, 653 P.2d 1199 (1982). A statement appearing in an appellate court opinion or syllabus is dictum when the statement was not necessary to the appellate disposition of the case in which the statement appears. All reference or allusion to the so-called mental reservation concept appearing in our case law is dictum and of no materiality to our resolution of the case before us.

In accord with the foregoing, we conclude that the existence of "mental reservation" was not necessary to proof of Sunflower's entitlement to the shifting to the Fund of liability for compensation owed to Denton. Thus, we need not decide whether "mental reservation" was proved.

As its second issue, the Fund complains that there was not substantial competent evidence to support the trial court's shifting of all liability for the compensation owed Denton under the "but for" rule which is enunciated in K.S.A. 44-567(a)(A) as follows:

"Whenever a handicapped employee is injured . . . and . . . the injury . . . probably or most likely would not have occurred but for the preexisting physical . . . impairment of the handicapped employee, all compensation . . . shall be paid from the workers' compensation fund."

No sufficiently worthwhile purpose is to be served by our discussion of this issue in detail. It is enough to say that the relevant evidence appearing in the record on appeal is conflicting, and the trial court's application of the "but for" rule is supported by the testimony of at least one of the testifying physicians. That is sufficient regardless of whether we might have held differently had we been the factfinder.

Affirmed.