**Rowana K. RIGGS, Plaintiff,**

v.

**The BOEING COMPANY, Defendant.**

**No. Civ.A. 99–2090–CM.**

United States District Court,
D. Kansas.

May 19, 2000.

Rowana K. Riggs, Wichita, KS, pro se.

Trisha A. Thelen, Foulston & Siefkin, L.L.P., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter is before the court on defendant's, The Boeing Company's, motion for summary judgment (Doc. 57).[1]  For the

---

1. In response, the pro se plaintiff filed a pleading titled "Plaintiff's Motion to Deny Motion for Summary Judgment by Defendant" and containing a supporting memorandum.  The court accepts the motion and memorandum as a response to the defendant's summary judgment motion.  The defendant replied by memorandum, and plaintiff filed a memorandum entitled "In Reply to Defendant's Response to Plaintiff's Motion to Deny Summary Judgment."

reasons set forth more fully below, defendant's motion for summary judgment is granted.

As a preliminary matter, the court notes that the plaintiff, Ms. Riggs, appears pro se. The court advised the plaintiff that it would likely be helpful for her to secure the assistance of an attorney in this matter, and instructed her that she must follow the requirements of the Federal Rules of Civil Procedure and the Local Rules in prosecuting her action. The court has taken pains to construe the plaintiff's pleadings and memoranda liberally and to search the record for facts and arguments which the plaintiff may have overlooked. For example, even though the plaintiff's "reply" memorandum is not proper under the rules, the court considered the arguments contained therein.

## I. Summary Judgment Standards

In her "motion," plaintiff included the legal standards for a motion to dismiss, and further argued in her "reply" that the court must accept the allegations of the complaint as true, and that the defendant's motion should be denied because "plaintiff can prove a set claim [sic] which would entitle her to relief." (Pl.'s Reply at 3). The motion presented is not, however, a motion to dismiss, and the plaintiff argues the wrong standard.

At issue is a motion for summary judgment pursuant to Rule 56. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To withstand defendant's motion for summary judgment, plaintiff must "direct the court to facts which establish a genuine issue for trial." *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995).

## II. Uncontroverted Facts

In her "motion," the plaintiff quotes the first paragraph of Local Rule 56.1 in its entirety. Perhaps because she viewed her "motion to deny summary judgment" as the motion referred to in that paragraph, she stated one numbered "fact" and did not controvert the defendant's facts. In her "reply," however, the plaintiff asserts that she correctly did not address defendant's uncontroverted facts. Plaintiff argues that, because defendant assumed plaintiff was injured on the job and accepted her restrictions as stated, the defendant's other uncontroverted facts are irrelevant.

It is clear that the pro se plaintiff does not understand the framework under which a claim pursuant to the Americans with Disabilities Act (ADA) is analyzed. Admission of an on-the-job injury and of physical restrictions resulting from the injury are not conclusive of discrimination under the ADA. Therefore, the facts stated by the defendant are deemed admitted because they were not specifically controverted by the plaintiff. However, the court has made its own search of the record for additional facts precluding summary judgment. *See Amro v. Boeing Co.,* 153 F.3d 726, 1998 WL 380510 at *1 n. 1 (10th Cir.1998) (*citing Downes v. Beach,* 587 F.2d 469, 471 (10th Cir.1978) (the court may make an "assiduous review of the record," to determine a summary judgment motion)).

The plaintiff was hired by the defendant on November 14, 1985, as a Helper Manufacturing, and has been continuously employed by defendant since. On November 2, 1990, plaintiff's job was upgraded to Hand Finisher—Milled Spars and Skins. Both jobs are physically demanding and

require the use of hand-held vibratory and power tools to polish, buff, and grind parts used in aircraft manufacture at the defendant's Wichita facility. As a result of injuries, in November 1991, Boeing imposed permanent medical restrictions on the plaintiff.[2] Her restrictions were "no prolonged repetitive use of thumb (avoid polishing for prolonged periods)." (Def.'s Mem. in Support, Ex. 7).

Plaintiff injured her thumb again in November 1992, and was subsequently diagnosed by Dr. Morris, for Boeing, with overuse syndrome manifesting itself as mild carpal tunnel syndrome. A course of treatment was instituted, and plaintiff was temporarily tasked with an easier job. On follow-up in January 1993, plaintiff was released from all restrictions and told to return if problems developed.

In October 1996, plaintiff returned to Dr. Morris. She was placed on therapy and anti-inflammatory drugs and was told to limit her use of vibratory tools to four hours a day. To satisfy the restriction, Boeing allowed plaintiff to perform sweeping and mopping duties in her shop. Between November 1996 and February 1997, plaintiff made several follow-up visits with Dr. Morris. She continued to complain of mild pain, but she desired to work without restrictions. This was at least partly because she could not work overtime unless she were doing full duties. In December 1996, Dr. Morris released her to work without restrictions.

Plaintiff was upgraded in December 1996 to a job as Machined Parts Finisher. The job was in the same shop as her previous jobs and involved essentially the same work with vibratory and power tools.

Plaintiff made a final visit to Dr. Morris in April 1997. Her pain continued, but she told Dr. Morris that she did not want to be placed on restrictions. Dr. Morris released her to work without restrictions.

At some point after her first injury, the plaintiff began seeking a transfer to a job that was easier, or that did not cause her pain.[3] In the spring of 1997, plaintiff began to seek disability retirement. Because she did not meet the requirements, her request was denied.[4]

Defendant conducted an ergonomic safety evaluation of the plaintiff's work station and subsequently offered to transfer plaintiff to a job in housekeeping. In response to the offer, plaintiff wrote a letter on July 31, 1997, which can fairly be viewed as a request for accommodation for carpal tunnel syndrome. In the letter plaintiff alleged that the housekeeping job would aggravate her symptoms, and she requested that she "be retrained and placed in an appropriate position." (Def.'s Mem. in Support, Ex. 5, p. 2).

On July 28, 1997, the plaintiff was evaluated by an independent doctor who recommended that she discontinue her job as a grinder and limit her use of vibratory tools. Consequently, the defendant reassigned plaintiff as a Material Processor/Requisition Facilitator B on August 4, 1997. The material processor position consists of various tasks which do not involve the use of hand-held power tools. Plaintiff was first assigned as a dispatcher, which required her to input part numbers, tinker numbers and other data into a computer. In a short time, plaintiff noticed that the repetitive activity at the computer

2. Defendant alleges the restrictions were put in place April 21, 1992. However the medical document referred to by defendant is dated November 11, 1991. It is also unclear whether this constitutes a job-related injury, but the document shows "case status" as "occ."

3. Boeing might dispute whether plaintiff was seeking accommodation or merely seeking advancement in the company. In any case,

viewing the evidence in the light most favorable to plaintiff as the non-moving party, it is clear that plaintiff began seeking an easier job at some point.

4. Plaintiff admits that denial of her request for medical retirement is not an issue in this case. (Pre–Trial Order at 5); (Pl.'s Mem. in Support at 1).

was causing her continued pain and asked to be assigned a different job.

The plaintiff was next assigned as an expediter. This work required plaintiff to locate parts, tag them, and input the location of the parts and color of the tag into the computer so that they could be identified for pick-up. Computer use as an expediter also proved to be painful for the plaintiff, and by September 17, 1997, she was assigned as a runner. The runner job required plaintiff to use a scooter with a three-speed shifter to pick-up and deliver parts. The job also required plaintiff to fill out requisition sheets and input information into the computer to track the parts.

On October 31, 1997, Dr. Lynn Ketchum performed an independent medical evaluation of the plaintiff's condition, concluded that the runner job was a good one for the plaintiff, and recommended that plaintiff stay in that job because it required no use of vibratory tools. Dr. Ketchum testified as to the appropriate restrictions to be placed upon the plaintiff: limit hand grinding to three hours a day, limit computer use to two hours at a time with four hours maximum per shift, no prolonged repetitive use of her right thumb, avoid polishing for prolonged periods of time, task rotation every two hours, no overhead work, and no repetitive gripping. Dr. Ketchum did not restrict the plaintiff from work, and plaintiff has missed no work time because of her restrictions.

Plaintiff has not formally requested that the runner job be modified, nor has she filled out a request for accommodation form in accordance with Boeing policy and procedures. However, in her deposition testimony plaintiff asserted that none of the jobs assigned her by the defendant fits within her restrictions and that she has continually asked to be assigned to different jobs or to tasks which are within her restrictions. In January 1999, plaintiff was reassigned as an expediter.

Plaintiff filed charges with the Equal Employment Opportunity Commission (EEOC), received a right to sue letter, and subsequently filed this suit on March 1, 1999. At all times since December 1996, plaintiff has been employed in grade three positions at the defendant's facility.

## III. ADA Framework

### A. Statutory Framework

The ADA prohibits discrimination against a qualified individual with a disability because of that disability in regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a); *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Discrimination includes failure to make reasonable accommodation for the known physical limitations of an otherwise qualified individual with a disability unless the accommodation would impose an undue hardship upon the employer. *See* 42 U.S.C. § 12112(b)(5)(A); *McCleary v. National Cold Storage, Inc.*, 67 F.Supp.2d 1288, 1297 (D.Kan.1999).

The statute defines disability as "a physical ... impairment that substantially limits one or more of the major life activities of [the plaintiff.]" 42 U.S.C. § 12102(2)(A). A qualified individual with a disability is defined in the statute as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see York Int'l*, 45 F.3d at 360. "Reasonable accommodation," though not defined by the statute, may include "job restructuring, ... reassignment to a vacant position, ... and other similar accommodations." 42 U.S.C. § 12111(9)(B); *see Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161 (10th Cir.1999).

### B. Prima Facie Case

The Tenth Circuit has recognized at least three ways to analyze cases under the ADA. The first situation involves a fact pattern where the defendant employer asserts that the plaintiff's disability was not

taken into consideration in making the adverse employment decision at issue. *See Pushkin v. Regents of the Univ. of Colo.,* 658 F.2d 1372 (10th Cir.1981); *York Int'l,* 45 F.3d at 361, n. 6. A second analytical framework must be used where the defendant admits plaintiff's disability was considered in the decision, but alleges that no reasonable accommodation was possible. *See York Int'l,* 45 F.3d at 361, n. 6 (*citing Barth v. Gelb,* 2 F.3d 1180, 1185–87 (D.C.Cir.1993)). The third analytical framework applies where reassignment may be the only reasonable accommodation available. *See Midland Brake,* 180 F.3d at 1178. Because the plaintiff here can be viewed as arguing alternatively that the defendant has failed to offer a reasonable accommodation or that reassignment is the only reasonable accommodation available, the court will use the second and third analytical frameworks.

In order to establish a prima facie case using the second framework, plaintiff must show (1) that she has a disability, (2) that she is qualified, with or without reasonable accommodation, to perform the essential functions of her job, and, (3) that the defendant refused to accommodate her disability. *See York Int'l,* 45 F.3d at 360. If the plaintiff fails to establish that she is qualified, even with reasonable accommodation, to perform the essential functions of the job, she may attempt to establish a prima facie case using the third analytical framework (reassignment). In that case, plaintiff must show (1) that she has a disability, (2) that accommodation is not reasonably possible in her present job, (3) that she requested reassignment, and, (4) that she is qualified, with or without accommodation, for one or more appropriate jobs which were available at the time of her request for reassignment. *See Midland Brake,* 180 F.3d at 1179. As the first element of a prima facie case under either framework, the plaintiff must show that she is disabled within the meaning of the ADA.

## IV. Disability

The plaintiff argues, based upon a Kansas Division of Workers' Compensation Form 88, that she is disabled and that the defendant knew she was disabled as early as February 1989. In the form, the defendant acknowledges that the plaintiff is an employee "hired and/or retained ... with full knowledge of a handicap, disability or physical impairment, pursuant to K.S.A. 44–566 [of the Kansas Workers' Compensation Act]." (Pl.'s Mem. in Support, Ex. 15). In her argument, the plaintiff assumes that a "disability" under the Kansas Workers' Compensation Act is the same as a "disability" under the ADA.

That is not the case. Pursuant to the Kansas Workers' Compensation Act, a "handicapped employee" is an individual with a physical impairment who would be disadvantaged in obtaining employment because of the physical impairment. *See Denton v. Sunflower Elec. Co-op.,* 12 Kan. App.2d 262, 264, 740 P.2d 98, 100 (1987). For instance, an individual with poor eyesight that is correctable to 20/20 with the use of eyeglasses has a physical impairment which presents a disadvantage in obtaining employment as an airline pilot, but that individual is not disabled under the ADA because the impairment does not "substantially limit" the major life activity of seeing. *See Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 900–03 (10th Cir.1997). Plaintiff must establish that she is disabled within the meaning of the ADA.

In her "motion to deny the defendant's motion," the plaintiff argues, based upon *Dutton v. Johnson County Bd. of County Comm'rs,* 859 F.Supp. 498 (D.Kan.1994), that the only issue before the court is whether accommodating the plaintiff would impose undue hardship upon the defendant company. In making that argument the plaintiff ignores the statute, the analytical framework provided by the Tenth Circuit, and the analysis of the *Dutton* court. The plaintiff cites to the statement of the law in *Dutton:* "An employer who fails to provide reasonable accommo-

dation to the known physical or mental limitations of a qualified individual with a disability commits unlawful discrimination unless the accommodation can be shown to impose undue hardship." *Dutton* 859 F.Supp. at 506. Plaintiff thus assumes that she is a qualified individual with a disability and that any accommodation she has requested is reasonable.

The *Dutton* court, however, recognized Dutton's burden to establish that he was "disabled" and "qualified," *id.* at 504, and that "[t]o prevail on his claim, plaintiff must prove that he is a 'qualified individual' with a disability." *Id.* at 506. The court noted that Dutton was qualified to do his job (when he was not absent due to his impairment) and found that the remaining issue was whether a reasonable accommodation was available which did not create an undue hardship on the county. *See id.* Here, as in *Dutton,* the plaintiff has the burden to show that she is "disabled" and a "qualified individual with a disability" within the meaning of the ADA.

### A. Impairment of a Major Life Activity

■ In deciding whether the plaintiff has a disability within the meaning of the ADA, the court must make three determinations. First it must determine whether plaintiff has an impairment. Then the court must determine whether the life activity upon which the plaintiff relies constitutes a major life activity. Finally, the court must determine whether the impairment substantially limits the major life activity. *See McCleary,* 67 F.Supp.2d at 1297–99. For purposes of summary judgment, the defendant concedes that the alleged carpal tunnel syndrome constitutes an impairment within the meaning of the ADA.

Proceeding to the second question, plaintiff does not identify what major life activity is impaired. Defendant notes, however, that plaintiff asserts impairment of her ability to lift, vacuum, sweep, mop, have sexual relations, and engage in athletic activities. As the defendant argues,

lifting is the only activity asserted which has been recognized as a major life activity. *See Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996). The court finds that the plaintiff alleges that carpal tunnel syndrome affects the major life activity of lifting.

■ The court might infer from the record that the plaintiff also alleges she is substantially impaired in the major life activity of working. In order to establish that she is substantially limited in the major life activity of working, however, plaintiff must show that, compared to the average person, she is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes. *See Williams v. Kerr–McGee Corp.,* 110 F.3d 74, 1997 WL 158176, *6 (10th Cir. 1997). Because the plaintiff has produced no evidence that she is restricted in performing a class of jobs or a broad range of jobs in various classes, she cannot show that she is substantially impaired in the major life activity of working.

### B. "Substantially Limits" the Major Life Activity of Lifting

■ The plaintiff has a disability within the meaning of the ADA only if carpal tunnel syndrome "substantially limits" the major life activity of lifting. Substantial limitation involves an inability or severe restriction in performing the major life activity as compared to the general population. In determining substantial limitation, courts look at three factors: (a) nature and severity of the impairment, (b) its duration or expected duration, and (c) its expected permanent or long-term impact. *See Dutton,* 859 F.Supp. at 505.

#### 1. Tenth Circuit Law

Defendant argues that plaintiff has not offered any evidence to compare her ability to lift with that of the society as a whole, and, therefore, the plaintiff may not establish a prima facie case. The rule is not so simple. *Compare Lowe,* 87 F.3d at

1174; *EEOC v. United Airlines, Inc.*, 185 F.3d 874, 1999 WL 397390, *3–4 (10th Cir.1999); *and Moroney v. United Parcel Serv., Inc.*, 70 F.Supp.2d 1267, 1270–71 (D.Kan.1999); *with Gibbs v. St. Anthony Hosp.*, 107 F.3d 20, 1997 WL 57156, *2 (10th Cir.1997); *and Reese v. Owens–Corning Fiberglas Corp.*, 31 F.Supp.2d 908, 918 (D.Kan.1998). Generally, a plaintiff must compare her ability in the identified major life activity with that of the general population. *See, e.g., Sutton*, 130 F.3d at 900–01; *Gibbs*, 1997 WL 57156 at *2; *Lowe*, 87 F.3d at 1173.

In *Lowe* the court held that the plaintiff had presented evidence sufficient to withstand summary judgment even though she had not compared her ability to lift with the ability of the average person. The evidence relied upon in *Lowe* was that the plaintiff had multiple sclerosis, was unable to lift anything weighing more than fifteen pounds, and could only lift fifteen pounds occasionally. Multiple sclerosis is a neurological disease with no known cure, and the long-term impact varies with the individual form of the disease. *See Lowe*, 87 F.3d at 1174. The plaintiff's doctor had provided a letter to her employer, the defendant. In the letter, the doctor indicated the plaintiff's restrictions in lifting fifteen pounds. *See id.* at 1172.

About six months later, in *Gibbs*, the Tenth Circuit affirmed an order of the district court granting summary judgment to a defendant employer in similar circumstances. In *Gibbs*, the plaintiff had been restricted by her doctor from lifting more than fifteen pounds repetitively or twenty-five pounds absolutely. *See Gibbs*, 1997 WL 57156 at *1. The *Gibbs* court held that the evidence offered by the plaintiff was insufficient to show she was substantially limited in the major life activity of lifting because the offered evidence said nothing about the abilities of the average person to allow a comparison. *See id.* at *2. The two cases are virtually indistinguishable despite the court's assertion to the contrary in *EEOC v. United Airlines*, 1999 WL 397390 at *3. However, the plaintiff here, unlike the plaintiff in either *Lowe* or *Gibbs*, has presented no **medical** evidence to show the nature, severity, duration and impact of her impairment on the major life activity of lifting.

### 2. Application

In presenting a prima facie case, the burden is on the plaintiff to show the nature, duration, and impact of her impairment on the major life activity of lifting. *See id.; McCleary*, 67 F.Supp.2d at 1297–99. Here, the plaintiff presents no medical evidence of a restriction on her **lifting** ability. The restrictions she presents deal only with repetition and duration of certain activities and with task rotation. The only activity absolutely prohibited is overhead work. In her "reply" the plaintiff argues that the prohibition of overhead work is equivalent to a restriction on her lifting abilities. The overhead work restriction would preclude lifting over her head, but much lifting does not occur overhead. The plaintiff provides no evidence regarding any overhead lifting required in her job. The overhead work restriction says nothing about the plaintiff's **lifting** ability. Further, plaintiff provides no evidence as to the ability of the average person to lift overhead.

Plaintiff admits she never had a lifting restriction. (Def.'s Mem. in Support, Ex. 1, Pl. Depos., p. 248, ll. 17–24). The plaintiff's evidence does not meaningfully discuss the nature, severity, duration or impact of her lifting limitations. Dr. Morris testified to the effect that the plaintiff is not substantially limited in any activity other than repetitive hand motions or use of vibratory tools. (*Id.*, Ex. 10, Morris Depos., p. 26, l. 18–p. 28, l. 20). The only testimony regarding plaintiff's lifting ability is her personal testimony that she can lift only five or ten pounds without aggravating her injuries. (*Id.*, Ex. 1, p. 171, ll. 5–22). The summary judgment record does not support the conclusion that this case is one where a lay jury properly could

find a disability based on nothing more that the plaintiff's self-serving conclusory allegation that she is limited to lifting five or ten pounds.

■ Finally, because plaintiff has presented no evidence whatsoever as to the lifting ability of the average person, and because she has not presented evidence of the nature, severity, duration, or impact of her lifting impairment, plaintiff cannot compare her lifting ability to that of the average person. Therefore, although it is a close question in light of precedent in this circuit, plaintiff cannot show she has a disability within the meaning of the ADA because she has not provided evidence from which a reasonable jury could find that she is substantially impaired in the major life activities of lifting or working. Therefore, defendant's summary judgment motion is granted.

### V. Qualified Individual with a Disability

Even if the court assumes that plaintiff has a disability within the meaning of the ADA, defendant's motion for summary judgment may be granted if plaintiff cannot show she is a **qualified** individual with a disability. *See EEOC v. United Airlines*, 1999 WL 397390 at *4.

#### A. *Reasonable Accommodation Framework*

An individual with a disability is a qualified individual with a disability if she can perform the essential functions of her job with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8). Implicit in the allegations that the defendant has not accommodated plaintiff's limitations is the allegation that plaintiff could not perform the essential functions of her job(s) without reasonable accommodation.

■ Defendant argues that the plaintiff neither quit nor missed any work because of her carpal tunnel syndrome. Therefore, defendant contends plaintiff **has performed** the essential functions of her job(s), and is, consequently, not a qualified individual with a disability. A failure to reasonably accommodate known physical limitations constitutes discrimination under the ADA. The court does not read the statute to require that an employee remove herself from the employer's discriminatory actions by quitting or missing work before she may assert discrimination under the statute.

Defendant further argues that the runner job is the only job at issue in this case. However, plaintiff alleges that the defendant failed to accommodate her physical limitations in all the jobs she has held since 1991. The court finds an issue of fact regarding whether plaintiff may allege a continuing violation of the ADA.[5] Therefore, the court will consider all of the jobs plaintiff has held since 1991. Plaintiff has presented evidence from which a reasonable fact-finder might conclude that each of the jobs required plaintiff to perform work which violated the physical limitations imposed by her doctors. Viewed in the light most favorable to the plaintiff, the facts show that the plaintiff cannot perform the essential functions of the jobs.

Since the plaintiff cannot perform the essential functions of her jobs, the court must determine whether she could perform the essential functions of the jobs with reasonable accommodation. *See York Int'l*, 45 F.3d at 361–62. The plaintiff bears the burden to produce evidence that accommodation is possible. *See id.* at 361. Plaintiff has produced no evidence showing any reasonable accommodation which

---

**5.** The defendant raises the issue of exhaustion of administrative remedies. The court finds a question of fact whether the defendant's actions constitute a continuing violation of the ADA. Assigning work inconsistent with medical restrictions may be a failure to accommodate. Reassignment may be a form of reason-

able accommodation. And, deciding the issue of exhaustion would not dispose of the case. Therefore, the court assumes that the plaintiff can show jurisdiction over the claims for discrimination and failure to accommodate, at least after November 11, 1997.

would allow her to perform the essential functions of the jobs at issue. Plaintiff does not allege that the tasks which violate her known physical limitations are not essential functions of the jobs and that it would be a reasonable accommodation to eliminate those tasks from the jobs. Her assertion that the defendant could have or should have accommodated her does not constitute evidence that accommodation is possible. Plaintiff does not present any accommodation short of reassignment that would meet her burden of production under the reasonable accommodation analytical framework.

Therefore, plaintiff has not met her burden to show that she is a qualified individual with a disability because she has not produced evidence that she can perform the essential functions of her jobs, even with reasonable accommodation. However, plaintiff may be able to establish that she is a qualified individual with a disability under the reassignment analytical framework.

### B. Reassignment Framework

 In order to prevail under the reassignment framework, plaintiff must show that she "was qualified, with or without reasonable accommodation to perform one or more appropriate vacant jobs within the company." *Midland Brake*, 180 F.3d at 1179. An appropriate job is one which does not involve a promotion and for which the plaintiff is qualified. *Id.* at 1177–78. Summary judgment is proper if the defendant can conclusively show that the plaintiff was not qualified, with or without reasonable accommodation, for any of the alleged appropriate vacant jobs. *Id.* at 1179.

The plaintiff has identified a first-line management job, a security job, and an inspector job as jobs to which she believes the defendant could transfer her as a reasonable accommodation for her disability. Defendant has produced evidence that each of the jobs would involve a promotion for the plaintiff. Furthermore, plaintiff

indicated in her testimony that "there's probably nothing that Boeings [sic] really has for me to do even with security, management, or inspection." (Def.'s Mem. in Support, Ex. 1, Pl. Depos., p. 302, ll. 8–10). "So, probably security wouldn't do me any good and probably not inspection." (*Id.*, p. 303, ll. 5–6). It is a fair inference from these statements, in context, that the plaintiff admits that she is not qualified for the three jobs at issue. Plaintiff has not shown that the jobs she has identified are appropriate vacant jobs under the reassignment framework. Nor has she provided evidence to show she is qualified for an appropriate vacant job. Therefore, plaintiff cannot establish that she is a qualified individual with a disability under the ADA. Defendant's motion for summary judgment is granted.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 57) is granted.